J-A16043-21

2021 PA Super 162

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                  :             PENNSYLVANIA
                                                  :
                        v.                        :
                                                  :
                                                  :
COLIN FRANK KING                          :
                                                  :
                  Appellant                   :        No. 34 MDA 2021

Appeal from the PCRA Order Entered December 9, 2020
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000723-2018

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                **FILED: August 13, 2021**

Appellant, Colin Frank King, appeals from the order entered in the Court of Common Pleas of Schuylkill County dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, after an evidentiary hearing.  Herein, he contends the PCRA court erroneously deemed meritless his ineffective assistance of trial counsel claims assailing counsel's advisement to elect a non-jury trial and decision against appealing the denial of his motion to suppress.  After careful consideration, we affirm.

On March 23, 2018, at approximately 1:45 p.m., Appellant was traveling alone in a motor vehicle on Pennsylvania State Route 309 in the Borough of Tamaqua when police clocked his speed of travel at 63.6 miles per hour in an area with a posted speed limit of 45 miles per hour.  N.T. 2/7/19, at 3-5, 7.

_____

[*] Former Justice specially assigned to the Superior Court.

Patrolman Richard Bekesy of the Tamaqua Police Department pursued Appellant and activated the overhead lights to his patrol car, prompting Appellant to drive onto the berm of the highway and stop his vehicle in front of a driveway providing access to an automobile dealership.  N.T. at 8-9.

During the police/citizen encounter that followed, Officer Bekesy asked for Appellant's driver's license, but Appellant produced a Pennsylvania ID card, instead, and told Officer Bekesy that his license was not suspended and that he was presently working with PennDOT to correct that.  N.T. at 8.  Officer Bekesy performed a computer check of Appellant's driver's license and discovered it was, in fact, suspended.  The officer therefore called for backup and, in the meantime, prepared two citations for speeding and driving with a suspended license, respectively.  Tamaqua Police Officer Anthony Stanell arrived shortly thereafter.  N.T. at 9-10.

Officer Bekesy advised Appellant of the two citations he was receiving and asked him if he had a AAA or similar membership that provided towing service, as Appellant was no longer permitted to operate the vehicle and the officers could not drive the vehicle onto a private commercial lot for civil liability reasons.   Appellant answered that his mother owned the vehicle and had AAA coverage, but Officer Bekesy was unable to reach her at the number provided by Appellant.  Because Appellant and his mother were Philadelphia residents, and he was unable to identify any other persons who could arrive at the scene within 10 minutes and move the vehicle on Appellant's behalf, Officer Bekesy arranged to have the vehicle towed.

- 2 -

The officers told Appellant they were required to perform an inventory search of the vehicle in preparation for the tow, to which Appellant nervously responded that the officer did not need to take an inventory. N.T. at 13. The search disclosed a marijuana grinder placed atop the center console, N.T. at 17-18, and a loaded .40 caliber pistol inside the center console. N.T. at 13-14. Upon Officer Bekesy's announcement of his discovery of the loaded gun, Officer Stanell drew his pistol and ordered Appellant to place his arms behind his head and drop to his knees. A **Terry** frisk of Appellant uncovered a small bag of marijuana in Appellant's front pants pocket, and Appellant was placed under arrest. N.T. at 19.

Appellant was charged with possession of a firearm by a person not to possess,[1] possession of a firearm without a license,[2] possession of drug paraphernalia,[3] possession of a small amount of marijuana,[4] driving while operating privileges are suspended or revoked,[5] carrying a loaded weapon in a vehicle,[6] and speeding.[7] On February 7, 2019, Appellant was convicted on all charges after a non-jury trial, and he was sentenced on March 25, 2019, to an aggregate term of not less than four nor more than eight years of incarceration, plus an additional two years' probation.

---

[1] 18 Pa.C.S. § 6105(a.1).
[2] 18 Pa.C.S. § 6106(a)(1).
[3] 18 Pa.C.S. § 3113(a)(32).
[4] 35 P.S. § 780-113(a)(31)(i).
[5] 75 Pa.C.S. § 1543(a).
[6] 18 Pa.C.S. § 6106.1(a).
[7] 75 Pa.C.S. § 3362(a)(3).

On direct appeal, this Court affirmed judgment of sentence after dismissing as meritless Appellant's challenges to the sufficiency of the evidence offered to support his firearms convictions. *See Commonwealth v. King*, 496 MDA 2019 (Pa. Super., Feb. 12, 2020) (unpublished memorandum decision). Appellant did not file a Petition for Allowance of Appeal with the Pennsylvania Supreme Court.

On July 20, 2020, Appellant filed a timely first PCRA petition alleging ineffective assistance of counsel and improper obstruction of government officials with his right to appeal. With respect to the ineffectiveness claims raised, Appellant alleged that trial counsel had improperly advised him to pursue a bench trial rather than a jury trial because he would likely not receive a fair jury trial in Schuylkill County, as there may be some among its predominantly white jury pool who secretly harbor prejudiced attitudes against African Americans but would not admit this during *voir dire*. Appellant also asserted that counsel ineffectively failed to take an appeal from the court's order denying his motion to suppress all evidence obtained from the warrantless search of his vehicle.

At the PCRA evidentiary hearing of September 21, 2020, trial counsel disputed Appellant's characterization of his advice. Specifically, counsel testified that in his 31 years as a practicing attorney in Schuylkill County, serving as a public defender for over 20 years and an assistant District Attorney for two years, he has participated in many criminal trials. He testified that in his work as a public defender, he discusses ethnicity with his clients of

- 4 -

color and advises them that he "cannot guarantee" what attitudes jurors possess and whether they will accurately reveal such attitudes during *voir dire*, where counsel always asks in a case involving an African American defendant whether any prospective juror would be unable to serve as a fair and impartial juror. N.T., 9/21/20, at 19 Counsel, however, denied ever telling Appellant, or any other client, that they would not receive a fair trial in Schuylkill County, and he noted that the trial court had addressed this issue in a pre-trial hearing. *Id*. at 18-21.

Specifically, the record of the pre-trial hearing reveals the trial court and parties discussed this very issue as part of the colloquy necessary to verify whether Appellant wished to accept the Commonwealth's latest offer of 3 to 6 years' incarceration and to advise Appellant of his right to a jury trial. Appellant claimed that, despite his desire for a trial, he had initially accepted an initial plea deal of 9 to 23 months' incarceration—which the trial court later rejected because it required an amended charge which the court decided did not fit the facts—only because counsel had advised him that "12 white people here in Schuylkill County was going to find me guilty just because of the color of my skin." N.T. 12/10/18, at 2. Counsel denied ever making such a statement and maintained that he advised Appellant of his right to a jury trial, N.T. at 3, but Appellant insisted on a bench trial based on counsel's purported advice about jury prejudice.

On this point, a thorough discussion occurred, in which the court advised Appellant that a Schuylkill County jury could render a fair and evidence-based

verdict, that it would be counsel's endeavor to secure for him a fair-minded jury during *voir dire*, and that he was mischaracterizing counsel's position on the lack of guarantees in a trial:

> **APPELLANT:** Only thing I'm saying is that I have a ADA assisting me. . . . He's [defense counsel] only trying to send me up State. Any time he comes to see me and I open up my mouth to something that pertains to me and my case, he shuts me down and goes back to what the District Attorney wants. So I have no counsel when it comes to me. He's hellbent on sending me up State even though the Commonwealth has [a] lack of evidence. They – you know what I mean? He's looking at –-
>
> **THE COURT:** All right, Mr. King.
>
> **APPELLANT**: -- as a winnable case for me. It ain't 100 percent, but it's not an open, slam dunk case for the district Attorney either.
>
> . . .
>
> **THE COURT:** You understand, Mr. King, that you are entitled to a jury trial?
>
> **APPELLANT:** I'm entitled. If my attorney tell [sic] me I'm not going to have a fair trial here and 12 jurors going to find me guilty because of the color of my skin, why would I take 12?
>
> He ain't – he's not disputing what I am saying because he knows that's what he said to me. There's no way in the world. If my lawyer going to tell me I'm going to be a racist – there's going to be a racist trial, why would I pick it? I'd rather go in front of the judge.
>
> **THE COURT:** Attorney Burke, do you want to address that?
>
> **MR. BURKE:** Yes, Your Honor. Through my years of experience representing inmates at SCI Mahanoy and SCI Frackville, I did inform Mr. King that during the *voir dire* process I do ask the question would they be unable to serve as a fair and impartial juror due to his African American heritage.

What I did tell Mr. King was that I can't guarantee that the response would be an accurate one or [that] you'd get a response at all. You can't determine what – if a juror keeps their mouth shut, really, what their – what's going through their head.

He's certainly entitled to a jury trial if he'd like, but I didn't indicate that it was a slam dunk if he went to jury trial. I indicated a potential problem if people don't speak up and speak up what they really think.

**THE COURT:** Well, I mean, that could be – I mean, people can be prejudiced for a number of reasons.

**MR. BURKE:** Absolutely, Your Honor. And some people are quick to raise their hands and others are not. And if a hand isn't raised, I can't guarantee that 12 people are going to be fair and impartial. It's just – it's just a danger of the process.

**THE COURT:** Well, you can't guarantee it, but to say that an African American can't have a –

**MR. BURKE:** I didn't say that.

**APPELLANT:** You did say that, basically.

**MR. BURKE:** No, Your Honor. I said what it was. . . . If someone doesn't raise their hand and admit to their prejudice, I can't -- I can't guarantee that they're all fair and impartial jurors.

**APPELLANT:** Here in Schuylkill County.

. . .

**THE COURT:** That could be for any type of case.

**MR. BURKE:** Absolutely. Or a DUI case or any kind of case, Your Honor. You're right, Your Honor.

**THE COURT:** Well, I mean obviously that was portrayed to your client and now he doesn't feel that he can get a fair trial in Schuylkill County.

**MR. BURKE:** Your Honor, that's a question I have to ask. It's a question that's asked on a regular basis with regard to that.

**THE COURT:** I understand that, but the way it was conveyed to your client and now we have a situation where he doesn't feel he can get a fair trial in Schuylkill County.

You're requesting a nonjury trial, Mr. King?

**APPELLANT:** I mean, yes. I mean, from this, my counsel, he's telling me I'm not getting a fair trial here in Schuylkill County. And I look at Schuylkill County Prison, there's no African Americans that works there. There's no African Americans that work anywhere in Tamaqua Police Department, none here in the courthouse, none in the Probation Office. I mean, by looking at that and him telling me that, I have to be like – I'm not from here. I'm from Philadelphia, so . . .

**THE COURT:** I understand that, Mr. King. We've had many African Americans. We've had Mexican and many other minorities.

**APPELLANT:** I'm African American. I'm not Mexican.

**THE COURT:** I understand that, but I'm using that as an example.

**APPELLANT:** I asked him, I have my right, it's my right to be judged by my peers. He said, yeah, but I won't. it would be 40 white people to pick from so I will get 12 and went on about how they not going to be. So why would I take a jury trial when he already telling me that my chances just because they no – they not going to look at the evidence, they not going to look at any statement that hasn't been made or anything like that. They just going to say, okay, I can be manipulated, he's a convicted felon, you know what I'm saying, and already leaning towards guilty just because I'm black. So I'd rather take a judge.

**THE COURT:** All right, Mr. King, that's your decision to make. Schuylkill County is predominantly a white population. So if the majority of jurors, if not maybe all of them, will be white and there will not be African American – there may not be on the jury panel.

**APPELLANT:** I thought maybe I could get a jury sequestered from a county that do have African American citizens there that we can pick from a jury. Because if I'm picking from, I'm not being adjuged by my peers.

**THE COURT:** That's not going to happen because if –

**APPELLANT:** That's what he said. That's exactly what he told me. So basically I want a judge. I'd rather for a judge to be a racist.

**THE COURT:** What I'm saying is that even though they're not African American, jurors can still be fair and – fair and try you based on the evidence. And that's your attorney's job to make sure of that.

**APPELLANT:** I just –

**THE COURT:** He's basically saying that he can't guarantee that they don't have prejudices that they don't disclose when he asks questions.

Your indicating to the court that you understand that, that your attorney will represent you and try to get a fair jury. You're indicating you want a trial before –-

**APPELLANT:** Absolutely.

**THE COURT:** -- before a judge?

**APPELLANT:** I want a judge. I mean, he's basically not representing me when the only thing he's representing and putting on the table for me is to go up State. That's it. The only thing he comes over to the jail to give me is a deal to go up State. And when I sit there and say I don't want to take this deal, he gets upset and tell me, okay, go.

When I start to talk about things, about let's take it to trial, the Commonwealth don't have any fingerprints or DNA or start talking about the case, he shuts me down and say, you want to take this up State offer or not? Then just go.

And you, being my attorney, the only thing he's doing is the district attorney's bid. And he was an ADA he told me once before, maybe four years ago.

**THE COURT:** All right.

**APPELLANT:** I'm looking at two ADAs. I got one on my side and one on the other side.

**THE COURT:** Mr. King, I think you're mischaracterizing your conversations with Attorney Burke.

N.T., 12/10/18, at 3-10.

After consideration of issues raised at the PCRA evidentiary hearing, the PCRA court denied Appellant relief on his petition. In dismissing Appellant's claim of ineffective advice on whether to proceed to a jury trial, the PCRA court reviewed testimony taken at both the evidentiary hearing and the pre-trial status hearing where the trial court advised Appellant that he could receive a fair and impartial jury in Schuylkill County. From this record, the court determined that Appellant received fair advice from both defense counsel and the trial court regarding the possibilities of hidden prejudice in a jury, such that Appellant made a knowing and voluntary decision to proceed with a bench trial.

On whether counsel ineffectively failed to challenge on direct appeal the trial court's order denying the defense motion to suppress all evidence obtained from the warrantless search of his vehicle prior to towing, the PCRA court deemed counsel's decision reasonable in light of pertinent authority that supported the inventory search in question. Noting that the Vehicle Code prohibits a parked car from blocking a private driveway, **see** 75 Pa.C.S. §

3353(a)(2)(i), the PCRA court observed that the officers were required to tow Appellant's vehicle and, thus, allowed to check the interior for inventory to protect themselves against both claims of missing property and potential dangers lying within the vehicle. *See Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000).

Appellant files the present timely appeal from the PCRA court's order and raises the following two-prong issue for our consideration.

1. Whether attorney William Burke was ineffective in his representation of the Appellant for failing to pursue a jury trial as opposed to a bench trial, and whether attorney Burke was ineffective in failing to appeal the trial court's decision not to suppress evidence to the Superior Court.

Appellant's brief, at 5.

Our standard of review follows:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

Furthermore, to establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019) (citations omitted).

Counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). While claims of trial court error may support the arguable merit element of an ineffectiveness claim, a petitioner must meaningfully discuss each of the three prongs of the ineffectiveness claim to prove he is entitled to relief. *Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 780 (Pa. Super. 2015). We presume that counsel has rendered effective assistance. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015).

Appellant contends that counsel ineffectively failed to file an appeal from the court's order denying his motion to suppress evidence obtained from the warrantless search of his car. His claim essentially states police did not lawfully impound his car where "Officer Bekesy, or another member of the Tamaqua Police Department, could simply have pulled the Appellant's vehicle from its parking spot onto a nearby parking lot and allowed the Appellant to contact the owner of the vehicle to come and pick it up." Appellant's brief, at 11-12.

Officer Bekesy indicated at the evidentiary hearing, however, that officers are not permitted to drive another person's vehicle for reasons of potential civil liability, and the PCRA court observed that towing the car from the middle of the car dealership's entrance was consistent with the Vehicle Code's proscription against parking in a manner that blocks a driveway. Appellant presents no argument pertaining to the Tamaqua Police Department's impoundment policy in this regard.

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution protect citizens from unreasonable searches and seizures. *Commonwealth v. Richter*, 791 A.2d 1181, 1184 (Pa. Super. 2002). Therefore, "[a] warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception." *Commonwealth v. Lee*, 972 A.2d 1, 3 (Pa. Super. 2009) (citation omitted). An inventory search is one such exception to the warrant

requirement. **See Commonwealth v. Lagenella**, 83 A.3d 94, 102 (Pa. 2013).

> The purpose of an inventory search is not to uncover criminal evidence. Rather, it is designed to safeguard seized items in order to benefit both the police and the defendant. Inventory searches serve one or more of the following purposes: (1) to protect the owner's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; (3) to protect the police from potential danger; and (4) to assist the police in determining whether the vehicle was stolen and then abandoned.

**Commonwealth v. Hennigan**, 753 A.2d 245, 254-55 (Pa. Super. 2000) (emphasis added; citations and quotation marks omitted).

> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, *i.e.*, have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.

> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.

**Lagenella**, 83 A.3d at 102-03 (citation omitted) (concluding evidence did not support a finding that the vehicle, operated by a defendant with a suspended license, posed a public safety risk, where the vehicle was not disabled or damaged, no items of value were in plain view; and the parked vehicle did not impede the flow of traffic). **But see Commonwealth v. Peak**, 230 A.3d 1220, at \*\*5-6 (filed Mar. 30, 2020) (concluding police had authority to tow

- 14 -

another's vehicle driven by a defendant with suspended license and conduct an inventory search, where the vehicle blocked access to a gas pump at a commercial gas station, thus interfering with the regular course of the gas station's business).

In light of this precedent, we conclude the evidence established that Tamaqua police officers properly impounded and towed Appellant's vehicle, as it posed a public safety risk. The vehicle blocked the access road to a car dealership and neither Appellant nor anyone acting on his behalf was available to move the car in a timely manner as required under police department policy. Notably, Appellant offers no developed argument with citation to authority taking the opposing position that no public safety risk existed.

To the extent that Appellant seems to suggest in the alternative that Officer Bekesy's search impermissibly preceded the proper impoundment of the vehicle—again, a claim for which Appellant provides no citation to policy or authority—we observe that even assuming, *arguendo*, the accuracy of such a claim, the evidence in question would have been inevitably discovered during a lawful inventory search. The inevitable discovery doctrine provides:

> [E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence....[I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery

- 15 -

rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009).

Here, because Appellant's vehicle was parked illegally along State Route 309 in obstruction of an adjacent commercial driveway, and no one was available to drive it to an appropriate location, impoundment and towing of the vehicle was required. As such, the firearm in the vehicle would have been procured pursuant to a lawfully executed inventory search. *See id.* at 863 ("[B]ecause the police conduct routine inventory searches whenever a car is towed, and an inventory search includes looking into obvious storage places ... the gun would have inevitably been discovered absent police error or misconduct."). *See also Commonwealth v. Parker*, 248 A.3d 51 (Pa. Super. filed Jan. 27, 2021) (unpublished memorandum applying inevitable discovery doctrine to hold even if officer's warrantless search were unjustified, the illegally obtained evidence inevitably would have been discovered by an inventory search pursuant to a lawful impoundment and towing of the car).[8] Therefore, Appellant is entitled to no relief on his challenge asserting that counsel should have moved to suppress evidence obtained during the inventory search conducted of his vehicle.

Appellant's second claim centers on trial counsel's advisement that he could not guarantee an entirely evidence-based verdict free from racial

---

[8] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

prejudice. In this regard, however, he offers merely bare assertions that "his chances at acquittal would have been higher at a jury trial," Appellant's brief, at 12, and that "the Commonwealth would have had a more difficult time convincing a jury of the facts of constructive possession [of the gun hidden in the center console], than it would have a single judge." *Id*. at 13.

Because Appellant, therefore, fails to develop a meaningful argument with citation to pertinent decisional law as is his obligation under our precedent, we find this issue waived. ***See Commonwealth v. McGrath***, 2021 PA Super 132, *7, n.5 (June 28, 2021) (citing to ***Commonwealth v. Perez***, 93 A.3d 829, 838 (Pa. 2014) (the failure to develop an appellate argument with citations to supporting authorities and the record is waived)); ***Commonwealth v. Donoughe***, 243 A.3d 980, 986 (Pa. Super. 2020) (acknowledging, "It is not the role of this Court to formulate an appellant's arguments for him."). ***See also*** Pa.R.A.P. 2119(a) (requiring the argument to include "such discussion and citation of authorities as are deemed pertinent.").

Even if we were to review Appellant's claim on the merits, we would reject it. Initially, we agree with the trial court's assessment, adopted by the PCRA court, that Appellant mischaracterized defense counsel's advisement regarding the risks associated with opting for a jury trial. Moreover, the PCRA court observed in this regard that counsel's advice was offered in the context of his recommendation that Appellant accept the Commonwealth's offer of a negotiated sentence of 3 to 6 years, which, counsel predicted correctly, was

likely to be favorable to a sentence he would receive if he took his case to trial and was found guilty. Counsel's advisement about the risks of a jury trial were, thus, couched in terms of what counsel considered to be the better option presented with the Commonwealth's offer, not counsel suggesting the people of Schuylkill County are incapable of rendering a fair and impartial verdict.

Furthermore, as demonstrated in the record discussed *supra*, Appellant was properly advised by both the trial court and defense counsel at the pre-trial status hearing that while there are no guarantees of an impartial jury, mechanisms such as *voir dire* and a counsel's continuing obligation to advocate for a fair trial on a defendant's behalf are in place, along with procedural and other safeguards to ensure a fair trial.

To accept Appellant's position would be to denigrate the entire jury trial process which has numerous safeguards built in to assure fair trials, including review by appellate courts. Appellant clearly understood the trial court's message on this point, but he elected to stay with his choice of proceeding with a non-jury trial, a decision made knowingly, voluntarily and intelligently. Accordingly, Appellant's second ineffectiveness claim fails.

For the foregoing reasons, we discern no error with the PCRA order denying Appellant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/13/2021</u>