J-S14037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEPHEN BARRY-GIBBONS | : | |
| | : | |
| Appellant | : | No. 759 WDA 2021 |

Appeal from the PCRA Order Entered June 4, 2021
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003148-2016

BEFORE:  McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED:  June 6, 2022**

Stephen Barry-Gibbons (Barry-Gibbons) appeals from the order entered in the Court of Common Pleas of Erie County (PCRA court) dismissing his timely first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Barry-Gibbons contended that trial counsel was ineffective in the litigation of his motion to suppress evidence, failure to object to a curative jury instruction, and failure to call two potential witnesses.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

After a jury trial, Barry-Gibbons was convicted of criminal conspiracy — possession with intent to deliver a controlled substance (PWID), two counts of PWID, possession of drug paraphernalia, two counts of possession of a controlled substance, person not possess a firearm and receiving stolen property. The charges stem from the City of Erie Police Department's recovery of five baggies of heroin, ten baggies of cocaine, three handguns (one of which had been reported stolen), a digital scale, a hydraulic press, plastic baggies, razor blades, a manual press and lidocaine[1] from Barry-Gibbons' apartment located at 1055 West 30th Street in Erie on May 19, 2016, during the execution of a search warrant. Barry-Gibbons resided primarily in Detroit and was operating a drug business out of the apartment he rented in Erie.

After police received information in March 2016 that the West 30th Street residence was being used as location to store and sell drugs, Barry-Gibbons and co-defendant Franzora Smith (Smith) became the principal targets of a narcotics investigation. Police conducted a considerable amount of surveillance in the months leading up to securing the warrant and gathered evidence though controlled buys conducted with three confidential informants (CI).

_____

[1] Lidocaine is a topical sedative routinely used as a cutting agent for drugs.

On the day of Barry-Gibbons' arrest, Sergeant Michael Chodubski and multiple other plainclothes detectives followed Barry-Gibbons for most of the day because a CI had provided a tip that he would be in town to sell heroin. At about 4:20 p.m., Barry-Gibbons drove to the 3400 block of Cascade Avenue, where a female later identified as Ashley Dumas (Dumas) entered his vehicle and exited after a few minutes. Police stopped Dumas as she walked to her car and recovered a five-gram bag of heroin from her.[2] Barry-Gibbons drove to a local drug store where police arrested him and searched his vehicle incident to his arrest.[3] A search warrant for his residence was issued and executed a short time later.

Before trial, Barry-Gibbons filed an omnibus pre-trial motion seeking suppression of the evidence seized from his residence because the search was not supported by probable cause, later supplemented by raising several claims challenging the veracity and reliability of the CIs. Following an evidentiary hearing, the trial court denied the suppression motion.

The case proceeded to trial against Barry-Gibbons and Smith in August 2017 and the Commonwealth presented the testimony of Lieutenant Michael

---

[2] Dumas died of a heroin overdose in August 2016.

[3] Nothing of evidentiary value was found on Barry-Gibbons' person. Three passengers were in his vehicle, along with multiple cell phones and a purse belonging to the female passenger containing $14,000 in cash.

Nolan, the arresting officer in this case. The following exchange took place during direct examination:

Q. Okay. Now, real quick here, Sergeant Chodubski testified that Stephen Barry-Gibbons was transported to the Erie Police Department where Sergeant Chodubski began an interview with Mr. Barry-Gibbons, right?

A. Yes.

Q. And you came into that interview halfway through, right?

A. Yes.

Q. Just . . . tell me what happened when you walked into that room, Lieutenant Nolan?

A. I walked— Stephen Barry-Gibbons was seated in the far corner of the room from the door, so when you walk in, he's the first one I see. So I walked into the room and I saw him and he was sitting. He looked up at me and he said, "Good job, Mike, good fucking job," and he kind of put his head down and shook his head.

Q. Now, he was freely talking to you, correct?

A. Yes.

Q. From that point on?

A. Yes.

Q. Was there a reference made to the drugs that were recovered from this house?

A. Yes.

Q. Okay. If you could tell us about that part of your conversation with Mr. Barry-Gibbons?

A. Well, Sergeant Chodubski and Triana were talking to him. I was doing something else. Triana called me, said, "Hey, he's starting to talk to us, do you want to come down and help?" So I did, that's when my initial encounter with him occurred there.

- 4 -

They had not told him yet what we had found. And one of the detectives, I heard him ask him . . . how much did you bring here when you came? Apparently, they were that far along in the conversation. How much did you bring here? And his answer was, how much did you find? And I looked at him, and said, we found it, we got it all, we found it. And so I didn't tell him how much, but I told him we found it. And then he kind of . . . let out a big sigh, then he . . . explained what he said. Can I refer to my report to get that?

Q. Absolutely.

A. Okay. Well, I quoted him here. He said, "Oh, you got it all?" That was a question he asked me. And then he said that he had sent a brick of cocaine and a hundred grams of heroin to Erie and that it arrived two days before he got here. He didn't elaborate on how it got here or who brought it here. And he also explained that he hid the three guns. I didn't note that he said where, but he said he hid the three guns and that someone else, though, had brought them to the apartment not him.

Q. Okay. Now, lastly, it's also common that, from time to time you do use people that you think may be beneficial for you to further investigations, correct?

A. Yes, we do.

Q. Did Mr. Barry-Gibbons make any proposals to you about wanting to work for the Erie Police Department?

A. Yes, he did.

Q. What did he say in that respect?

A. Well, he told us that he'd be willing to help us get some bigger fish, and that. But he said he couldn't go to the county prison. So what that means is he can't charge me now, because if I go to the county prison, **I'm on parole**, and I'll be locked up in there or . . . everyone is going to know that I was — that's what it was. Everyone is going to know that I was locked up.

[Defense Counsel:] Your Honor, excuse me. May we have a sidebar?

- 5 -

(N.T. Trial, 8/15/17, at 111-14) (emphasis added).

Because Lieutenant Nolan mentioned that he was on parole, counsel for Barry-Gibbons requested a mistrial, arguing that Lieutenant Nolan's comment "implies clearly that my client has a criminal history which is not otherwise admissible and is prejudicial." (*Id.* at 115). However, co-defendant Smith did not join in the request for a mistrial as his counsel believed that some of the testimony was helpful to his defense. (*Id.* at 119, 121-22). After discussing the issue, the trial court denied the motion for a mistrial, finding that Lieutenant Nolan's reference to parole was "just a comment in passing and not an intentional act by the Commonwealth to frustrate the case or prejudice the defendant." (*Id.* at 127). The court decided that a curative instruction was appropriate and advised the jury:

> I'm going to give you an instruction with regard to Lieutenant Nolan's testimony that he had when he entered the interrogation room with Mr. Barry-Gibbons up until the point **indicating that they had some kind of prior relationship is to be disregarded by you, fully and completely**. And it's not evidence in this case under any circumstances, nor can it be used by you during your deliberations in this case. Does everybody understand that?"
>
> (Jurors nod affirmatively.)
>
> The Court: Because those statements, that will be totally disregarded by you, all right? Continue with your examination of Lieutenant Nolan.

(*Id.* at 127-28). Counsel for Barry-Gibbons did not object to the court's instruction.

The jury found Barry-Gibbons guilty of the aforementioned offenses and the trial court sentenced him to an aggregate term of 27½ to 55 years of imprisonment. Barry-Gibbons' trial counsel Stephen Colafella, Esq. was granted leave to withdraw from representation after sentencing. No post-sentence motions or a direct appeal were filed.

After Barry-Gibbons' direct appeal rights were reinstated *nunc pro tunc* following his successful litigation of a PCRA petition, we vacated the judgment of sentence with respect to the receiving stolen property and two simple possession offenses, but affirmed it in all other respects. Because the disposition did not upset the overall sentencing scheme, we did not remand for resentencing. (**See Commonwealth v. Barry-Gibbons**, 2019 WL 2503185, at *16 (Pa. Super. filed June 17, 2019)). The Pennsylvania Supreme Court denied Barry-Gibbons' petition for allowance of appeal on January 15, 2020.

## B.

On December 14, 2020, Barry-Gibbons filed the instant counseled PCRA petition raising several claims of ineffective assistance of trial counsel as well as challenging the sentence due an incorrect calculation of his offense gravity score. He attached to the PCRA petition an unsworn affidavit purportedly executed by co-defendant Smith that he claims should have been utilized by his trial counsel at trial to establish that he did not give Dumas the drugs in question. According to Barry-Gibbons, this affidavit dated November 15,

2020, is a re-creation of Smith's original affidavit, which could not be located. It reads as follows:

> I, Franzora Smith, Swear that on 5/19/16, that I received a phone call from an associate that was locked up in Erie County Prison, informing me that Blake Williams' girlfriend, Ashley Dumas needed some assistance. I then called Ashley and told her to meet me on 34th and Cascade, in Erie, Pa, where I gave her 5 grams of heroin. I AM WILL TO TESTIFY Under Oath to this Truth in/on Camera Hearing in front of this said Court and Judge. And do so on my own accord and my own free will with No fear of retaliation/s from anyone . . . namely . . . Stephen Barry-Gibson [sic] or others. AND DO ACCEPT FULL RESPONSIBILTY FOR MY OWN ACTIONS IN THIS SITUATION.

(PCRA Petition, 12/14/20, Exhibit B) (emphasis original).

The PCRA court filed notice of intent to dismiss the PCRA petition without an evidentiary hearing as to all claims except for Barry-Gibbons' sentencing claim, which it found had merit. *See* Pa.R.Crim.P. 907(1). On February 2, 2021, the PCRA court entered an order granting relief regarding the sentencing claim only.

Barry-Gibbons filed a response to the Rule 907 Notice as to his ineffective assistance of counsel (IAC) claims and he raised additional ineffectiveness claims which the PCRA court deemed amendments to the original PCRA petition. The response attached a notarized copy of the Smith affidavit (notarized in April 2017) which counsel had just received. It also attached a sworn affidavit purportedly authored by CI Angelee Green (Green) dated March 29, 2017, which Barry-Gibbons claims trial counsel was aware of

and should have utilized at his suppression hearing or at trial. It provides as follows:

> I, Angelee Green, Swear that on 4/20/16, that I DID NOT tell [Lieutenant] Mike Nolan nor Officer Mike Chodubuski that I purchased any drugs from Stephen Barry-Gibson [sic] or anyone by the name of "Juan"[4] on said date of 4/20/16 and am willing to testify Under Oath to that Truth in/on Camera Hearing in front of this said Court and Judge. And do so on my own accord and my own free will with No fear of retaliation/s from anyone . . . namely . . . Stephen Barry-Gibson [sic] or others.

(Response to Rule 907 Notice, 3/17/21, Attachment 2) (emphasis original).

On April 14, 2021, the PCRA court issued a Memorandum and Notice of Intent to Dismiss, finding all of Barry-Gibbons' IAC claims lacked merit. Barry-Gibbons was resentenced on April 27, 2021, to an aggregate term of 10 to 20 years' incarceration with credit for time served. The PCRA court issued an order dismissing the PCRA petition on June 4, 2021, and Barry-Gibbons timely appealed. He and the PCRA court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

On appeal, Barry-Gibbons claims counsel was ineffective because he omitted certain claims from his suppression motion; counsel's failure to object to the cautionary instruction issued to the jury concerning Lieutenant Nolan; and his failure to call co-defendant Smith and CI Green as witnesses at the

---

[4] Juan is Barry-Gibbons' street name.

suppression hearing or at trial given the exculpatory statements made in their respective affidavits.[5]

## II.

## A.

It is well-settled that we presume counsel has rendered effective assistance. ***See Commonwealth v. Sarvey***, 199 A.3d 436, 452 (Pa. Super. 2018). "To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Id.*** (citation omitted). "If a petitioner fails to prove any of these prongs, his claim fails." ***Id***. (citation omitted). Counsel cannot be deemed ineffective for failing to raise a meritless objection. ***See Commonwealth v. Epps***, 240 A.3d 640, 649 (Pa. Super. 2020), *appeal denied*, 257 A.3d 700 (Pa. 2021). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." ***Commonwealth v. King***, 259 A.3d 511, 521 (Pa. Super. 2021) (citation omitted).

"Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests." ***Commonwealth v. Selenski***,

---

[5] The Commonwealth has not filed a brief.

228 A.3d 8, 16 (Pa. Super. 2020), *appeal denied*, 240 A.3d 462 (Pa. 2020) (citation omitted). "Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Id.** (citation omitted).

"The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." **King**, **supra** at 520 (citation omitted). "Counsel's decisions will be considered reasonable if they effectuated his client's interests." **Id.** (citation omitted). "We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." **Id.** (citation omitted). Finally, a defendant is entitled to a fair trial, not a perfect one. **See Commonwealth v. Laird**, 119 A.3d 972, 986 (Pa. 2015) (citation omitted).

## B.

Barry-Gibbons first contends that trial counsel should have challenged the legality of his arrest and the search of his vehicle.[6] He maintains that the

_____

[6] Our review of the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. **See King**, **supra** at 520 "The PCRA court's

search warrant was invalid because the time stamp shows it was issued after the search of his residence was complete, as well as the adequacy of the affidavit of probable cause because it was based on information provided by unreliable CIs. (**See** Barry-Gibbons' Brief, at 21). Barry-Gibbons argues that counsel lacked any reasonable strategic basis for failing to pursue these claims, and that his suppression motion would have been successful had he included them.

In considering this issue, the PCRA court observed that it lacks a factual basis because trial counsel did, in fact, raise these claims, although he may have phrased them in a different manner. The court found:

> In the suppression motion filed December 30, 2016 and the supplemental suppression motion filed April 12, 2017, counsel challenged the search warrant and surveillance that led to the search of Petitioner's residence and the seizure of numerous objects therein. Petitioner's trial counsel also challenged the validity of the information provided by confidential informants. Additionally, in the supplemental motion Petitioner's trial counsel challenged the validity of the information police obtained by surveillance of Petitioner's interactions with the female on the 3400 block of Cascade Avenue immediately preceding the arrest. In the suppression motions, counsel most certainly challenged Petitioner's arrest.
>
> The vehicle search occurred incident to the arrest. . . . In challenging the circumstances leading to arrest, Petitioner challenged the arrest, and by extension, the subsequent search of the vehicle.

---

credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.** (citation omitted).

. . . The [suppression motions] raised multiple challenges to the probable cause determination including challenges related to the timing of the issuance of the warrant in relation to the search and statements by Dumas. Petitioner's counsel further challenged probable cause, including the claim regarding the timing of issuance of the warrant in relation to the time of the search, during cross-examination of [Lieutenant] Nolan at the suppression hearing held April 19, 2017. During cross-examination by Petitioner's counsel, Lieutenant Nolan testified that after he left the scene of the arrest, he was heading back to Petitioner's residence when he received a call from Sergeant Chodubski informing him that District Judge Carney signed the search warrant. Thereafter, a search of Petitioner's residence was performed, and the warrant was delivered shortly after entry of the residence by Sergeant Chodubski. Thus, this particular challenge to probable cause was raised and fully addressed at the suppression hearing.[7] Despite these challenges, the Trial Court specified in the 1925(a) Opinion, 'there was a wealth of probable cause for issuance of a search warrant on Appellant's apartment.' The claim lacks factual basis and must be dismissed.

(Rule 907 Notice, 2/02/21, at 9-11) (record citations omitted).

After review of the suppression record, we agree with the PCRA court's assessment. Although Barry-Gibbons takes issue with the manner in which trial counsel litigated the motion to suppress, the record reflects that counsel consistently challenged the reliability of the CIs, the adequacy of the affidavit of probable cause, the timing of the warrant, the circumstances surrounding Barry-Gibbons' arrest, and the search and seizure of contraband from his residence. As noted, counsel will not be deemed ineffective if he took

---

[7] Counsel also repeatedly challenged the "veracity, reliability and basis of knowledge" of the CIs in the written motions and at the suppression hearing. (Supplemental Suppression Motion, at 2; *see also* N.T. Suppression at 76-78).

reasonable measures, without the benefit of hindsight, to effectuate his client's interests, which counsel clearly did in this case in pursuing the suppression issue. **See King**, **supra** at 520; **Selenski**, **supra** at 16. Barry-Gibbons' claims to the contrary do not merit relief.

**C.**

Barry-Gibbons next contends that trial counsel was ineffective for failing to object to the trial court's curative instruction addressing Lieutenant Nolan's testimony which he claims directly made the jury aware that he had a prior conviction. Barry-Gibbons maintains that the instruction was vague and was insufficient to cure any prejudice because it did not point out Lieutenant Nolan's specific reference to Barry-Gibbons' status as a parolee and, instead, merely addressed his testimony indicating that they had a prior relationship. (**See** Barry-Gibbons' Brief, at 45-49).

We begin by noting that the possible prejudicial effect of a reference to prior criminal conduct may be removed through issuance of a cautionary instruction. **See Commonwealth v. Fletcher**, 41 A.3d 892, 895 (Pa. Super. 2012), *appeal denied*, 57 A.3d 67 (Pa. 2012). A trial court has broad discretion in instructing the jury and can choose its own wording so long as the law is clearly and accurately presented. **See Commonwealth v. Vucich**, 194 A.3d 1103, 1111 (Pa. Super. 2018). When reviewing a jury instruction, we must "consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal

principles at issue." ***Commonwealth v. Reid***, 259 A.3d 395, 432 (Pa. 2021) (citation omitted).  Additionally, "it is well settled that the jury is presumed to follow the trial court's instructions."  ***Vucich***, ***supra*** at 1113 (citation omitted).

In this case, the trial court was tasked with alleviating any potential prejudice caused by Lieutenant Nolan's comments referring to his past interaction with Barry-Gibbons and status as a parolee.  The court instructed that Lieutenant Nolan's testimony "up until the point **indicating that they had some kind of prior relationship is to be disregarded by you, fully and completely**." (N.T. Trial, 8/15/17, at 128) (emphasis added).  The court did not repeat the word "parole."

Based on the forgoing and viewing the charge in its entirety in the context of Lieutenant Nolan's testimony, we conclude that the court issued an unambiguous instruction directing the jury to wholly disregard all of Lieutenant Nolan's statements upon his entrance into the interrogation room. Although the court declined to use the word "parole" in the instruction and, therefore, did not draw attention to the remark, the instruction clearly conveyed to the jury that Lieutenant Nolan's comments were not evidence and could not be considered in its deliberations and we presume that they followed the court's instruction.  ***See Vucich***, ***supra*** at 1113.  Because the charge viewed in its entirety appropriately addressed any potential prejudice

attributable to the challenged remarks, trial counsel was not ineffective for failing to lodge a meritless objection thereto. ***See Epps***, ***supra*** at 649.

**D.**

Barry-Gibbons next contends that trial counsel was ineffective for failing to call co-defendant Smith and CI Green to testify at trial. (***See*** Barry-Gibbons' Brief, at 49-58). According to Barry-Gibbons, trial counsel was aware of the affidavits provided by these individuals and should have presented them at the suppression hearing and/or trial.

When raising a claim of ineffectiveness for the failure to call a potential witness, a PCRA petitioner must demonstrate: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; **and** (5) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial." ***Commonwealth v. Orner***, 251 A.3d 819, 825 (Pa. Super. 2021) (*en banc*), *appeal denied*, 265 A.3d 1276 (Pa. 2021) (emphasis added).

The PCRA court explained regarding Smith:

> Trial counsel could not have raised the existence of the purported affidavit in the suppression motion filed December 30, 2016. This is because Petitioner never informed trial counsel, the Court, or the Commonwealth of the existence of any such affidavit until sentencing, when the Petitioner himself submitted it and other documents to the Court for consideration.

(Rule 907 Notice, 2/02/21, at 11) (citing N.T. Sentencing, 9/29/17, at 13-17).

As the PCRA court also emphasizes, the sentencing court found that the affidavit purportedly executed by Smith was not credible, as the Commonwealth presented eyewitness testimony "from police officers who were surveilling that transfer [from Barry-Gibbons] to that young lady [Dumas]." (N.T. Sentencing, at 5). Accordingly, even if counsel had been aware of the affidavit, the was no prejudice to Barry-Gibbons in light of the direct observations made by police of the drug transaction.

Regarding the affidavit purportedly executed by CI Green, the PCRA court found:

> It must be stated the contention that Petitioner's trial counsel received Ms. Green's affidavit ahead of time is baseless. While Petitioner presented the aforementioned affidavit of Franzora Smith as his sentencing hearing, he has never made mention of Ms. Green's affidavit until now.
>
> Even if we assume, *arguendo*, Petitioner had made trial counsel aware of the affidavit, there was no prejudice to Petitioner [as the trial court judge] indicated at sentencing there was a plethora of evidence upon which to base the probable cause determination, namely 'eyeball testimony from police officers who surveilled the transfers.' (N.T. Sentencing, at 5). Officers surveilled Petitioner's activities for months prior to the issuance of the warrant and saw first-hand the actions in which he engaged. Thus, the PCRA claim of ineffective assistance for failure to call Angelee Green as a witness must be dismissed.

(Memorandum and Notice of Intent to Dismiss, 4/14/21, at 3-4) (some record citations omitted).

Based on the foregoing and highlighting the credibility issues concerning the substance, timing and authenticity of the affidavits themselves, we conclude that Barry-Gibbons failed to show that these uncalled witnesses were

willing to testify on his behalf at the time of the suppression hearing/trial and that defense counsel was aware of their potential testimony. Furthermore, given the credible testimony of police officers during the proceedings recounting their first-hand observations of Barry-Gibbons during the time leading up to his arrest, he failed to establish that absence of such testimony was so prejudicial as to have denied him a fair trial. Accordingly, Barry-Gibbons' claim that counsel was ineffective in connection with these purported defense witnesses merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2022