**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHAUN KASHIF DAVIS | : | |
| | : | |
| Appellant | : | No. 890 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 21, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001787-2021

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED AUGUST 12, 2025**

Rashaun Kashif Davis appeals from the judgment of sentence entered following his convictions for possession of a firearm prohibited, firearms not to be carried without a license, and possession with intent to deliver.[1] He challenges the trial court's denial of his motion to suppress. We affirm.

The Commonwealth charged Davis with the mentioned crimes following a traffic stop that resulted in the recovery of a firearm and marijuana. Davis filed a motion to suppress all physical evidence recovered from his vehicle and statements he made to police officers. The court held a hearing where the Commonwealth presented testimony from Officers Austin Gallagher and Matthew Smith. The evidence presented at the hearing is as follows.

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 35 P.S. § 780-113(a)(30), respectively.

Officer Smith saw a vehicle "displaying a license plate with indicators" of a fraudulent license plate and relayed this information to Officer Gallagher who was also in the area. N.T., 12/28/22, at 21. Officer Gallagher saw the vehicle – a Ford Flex – with Davis in the driver's seat and his girlfriend in the front passenger seat. *Id.* at 12, 21, 46. Officer Gallagher conducted a traffic stop of the vehicle and Davis stopped the car in the center lane of West Chester Pike. *Id.* at 20. Before stopping the vehicle, Officer Gallagher "observed numerous characteristics of a fraudulent license plate on this paper Pennsylvania in transit tag." *Id.* at 11. After asking for Davis's license, registration, and insurance, Officer Gallagher learned that Davis did not have a license and the vehicle was unregistered and uninsured. *Id.* at 13, 15, 16. Officer Gallagher also noticed a smell of fresh marijuana coming from the vehicle. *Id.* at 16. Officer Gallagher told Davis to exit the vehicle and asked if there was anything illegal inside. *Id.* at 24. Davis said there was marijuana in the car. *Id.*

Officer Gallagher testified that Davis gave verbal consent to search the vehicle. *Id.* at 24, 27. During the search, he recovered:

- Marijuana and small Ziplock bags with logos in a multi-colored shopping bag in the back seat on the passenger side; and

- A Smith & Wesson 9-mm firearm, marijuana, and new and unused bags in the bottom part of the center console.

*See id.* at 28. Officer Gallagher did not ask Davis if he could search the entire vehicle and did not tell Davis that he did not have to give consent to search.

*Id.* at 37, 39. He also did not get written consent from Davis pursuant to the Marple Township Police procedure for a warrantless search. *Id.* at 37, 39.

Officer Gallagher explained that Marple Township has a written policy for inventory searches of vehicles. *Id.* at 30. He also explained the purpose of an inventory search: "To preserve any valuables, document the contents of the vehicle's interior, damage to the car, the outside of the car, document the mileage, any damage on the outside, and again, any valuables that may be inside the vehicle." *Id.* at 31. When an inventory search occurs, "a tow truck is called and a tow truck responds and tows the vehicle from the scene." *Id.* When asked if the items recovered would have been within the scope of the inventory search policy based on where they were found, Officer Gallagher said, "They were." *Id.* at 32. Officer Gallagher also identified the inventory report form completed for Davis's vehicle, which the Commonwealth admitted into evidence. *See id.* at 30, 61.

After recovering the marijuana, Officer Gallagher placed Davis in handcuffs. *Id.* at 28. Later, Officer Gallagher arrested Davis and his girlfriend and drove Davis to the Marple Township Police Department. *Id.* at 29. During the drive, Davis told Officer Gallagher, "It is all mine." *Id.* Officer Gallagher testified that Davis's statement was spontaneous and not the subject of questioning. *Id.* at 29. During the ride, Davis asked, referring to his girlfriend, "She's coming also?," and Officer Gallagher said, "We'll talk once we get to

the station." *Id.* at 46. Officer Gallagher did not give Davis his *Miranda*[2] rights, explain that he had the right to remain silent or explain that he had the right to an attorney. *Id.* at 42, 46.

Officer Smith testified that on the day in question, he saw a Ford Flex with what he believed to be a fraudulent Pennsylvania license tag. *Id.* at 48. He contacted Officer Gallagher about the vehicle since he also was in the area and Officer Smith arrived at the scene sometime later. *Id.* at 49-50. When he arrived, he approached the passenger side of the car and used his flashlight to see inside the vehicle. *Id.* at 50. He saw "green vegetable matter scattered over the rear of the vehicle" that he believed to be marijuana. *Id.* at 51. He also smelled fresh marijuana coming from the vehicle. *Id.* Officer Smith read Davis and his girlfriend their *Miranda* rights once they arrived at the police station. *Id.* at 52. After being given his *Miranda* rights, Davis gave a written statement. *Id.* at 54-55. The Commonwealth also admitted mobile video recording ("MVR") footage of the traffic stop into evidence.

The trial court found the officers' testimony credible. Order, filed 3/23/23, at 4 ¶ 4. It concluded that the officers had probable cause to stop the vehicle. The court also determined that "[e]ven if an inventory search was not conducted properly, the items seized would have been discovered seized subject to the inevitable discovery doctrine." *Id.* at 6 ¶ 18. It noted that Davis's vehicle had to be towed since he did not have a license, the vehicle

_____

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

was unregistered and uninsured, and the vehicle was blocking a travel lane. *Id.* at 6 ¶ 16. Regarding Davis's first statement to police, the court found that the statement "was not made as a result of him being questioned." *Id.* at 6 ¶ 20. The court also found that David did not give consent to search the vehicle. Specifically, "in reviewing the MVR [Davis] is not recorded making any comprehen[s]ible verbal response to the Officer's request for consent; rather it shows [Davis], at best, shrug his shoulders." *Id.* at 3 ¶ 14. The trial court denied Davis's motion to suppress.

Following a bench trial, the court found Davis guilty of the above-mentioned crimes. It sentenced him to an aggregate term of 36 to 120 months' incarceration and two years' reporting probation. *See* N.T., Sentencing, 11/21/23. The Commonwealth filed a motion to reconsider Davis's sentence that the trial court denied. *See* Motion to Reconsider Sentence, filed 12/4/23; Order, filed 2/20/24. This timely appeal followed. *See* Notice of Appeal, filed 3/19/24.

Davis raises the following issues:

1. Whether the trial court erred in its decision to deny [Davis's] suppression motion as the search of his vehicle was unconstitutional?

2. Whether the trial court erred in its decision to deny [Davis's] suppression motion as the statements made by [Davis] were taken in violation of his constitutional rights?

Davis's Br. at 4 (answers of trial court omitted).

Both of Davis's issues challenge the court's denial of his motion to suppress. Our scope and standard of review of an order denying a suppression motion is as follows:

> [O]ur standard of review for the denial of a suppression motion is *de novo* and is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole. When the sole issue on appeal relates to a suppression ruling, our review includes only the suppression hearing record and excludes from consideration evidence elicited at trial.

***Commonwealth v. Green***, 265 A.3d 541, 550-51 (Pa. 2021) (quotation marks and citations omitted).

Davis maintains that the warrantless search of his vehicle was unlawful. He points out that the court determined that he did not consent to the search and argues that the search was not conducted pursuant to an inventory search. He asserts that the evidence shows that the inventory search was "an afterthought." Davis's Br. at 14. Additionally, Davis argues that the inevitable discovery doctrine does not apply "since the inventory search was not properly conducted but was rather to further the police investigation." ***Id.*** at 15.

The United States and Pennsylvania Constitutions protect against unreasonable searches and seizures. ***Commonwealth v. Jones-Williams***, 279 A.3d 508, 515 (Pa. 2022). A warrantless search or seizure is unreasonable unless an exception to the warrant requirement applies. ***Commonwealth v.***

***McMahon***, 280 A.3d 1069, 1072 (Pa.Super. 2022). Exceptions include inventory searches and consensual searches. ***Id.*** Although under Pennsylvania's limited automobile exception, a warrantless search of a vehicle requires both probable cause and exigent circumstances, the inventory search exception remains valid. ***See Commonwealth v. Alexander***, 243 A.3d 177, 207 (Pa. 2020); ***Commonwealth v. Thompson***, 289 A.3d 1104, 1110 (Pa.Super. 2023) (concluding ***Alexander*** "does not eliminate the inventory search exception"), *appeal granted*, 303 A.3d 111 (Pa. 2023), *appeal dismissed as improvidently granted*, 315 A.3d 1277 (Pa. 2024).

Here, officers conducted a warrantless search of Davis's vehicle. While consent is an exception to the warrant requirement, the trial court found that Davis did not give valid consent. Nevertheless, the court concluded that the search was lawful under the inevitable discovery doctrine since the items would have been recovered during an inventory search. We agree.

"The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." ***Commonwealth v. King***, 259 A.3d 511, 522 (Pa.Super. 2021) (citation omitted). The doctrine applies where the "evidence would have been discovered despite the initial illegality." ***Id.*** (citation omitted). Where the Commonwealth can show "by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible." ***Id.*** (citation omitted).

"An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." ***Commonwealth v. Brinson***, 328 A.3d 1096, 1107 (Pa.Super. 2024) (citation omitted).

We conclude that the record supports the trial court's factual findings and its legal conclusions are correct. Officer Gallagher testified about Marple Township's policy for inventory searches and that the recovered items would have been within the scope of the inventory search policy. Additionally, as the trial court pointed out, "[Davis's] vehicle had to be towed, as [Davis] was not licensed to drive, the vehicle was not validly registered, or insured, and was blocking a lane of travel on West Chester Pike." Rule 1925(a) Opinion, filed 7/2/24, at 5. Thus, the evidence supports that the firearm and marijuana would have ultimately been discovered during the inventory search of the vehicle.

Next, Davis claims that both his statements to the police were made while in custody. Regarding his first statement, Davis argues that the evidence shows the officers "were not only trying to elicit a response from [Davis], but they were trying to elicit a specific response – that all the contraband found was his." Davis's Br. at 17. He cites portions of the MVR recording where Officer Gallagher said, "Maybe we can [M]irandize him and ask if it's all his . . . then we can kick her loose," and, "If he doesn't want to[,] we will take them both in." ***Id.*** (citing MVR, 21:07:45, 21:05). As to his second statement, Davis

does not claim that he involuntarily waived his **Miranda** rights but instead argues the statement should have been suppressed as the fruit of the poisonous tree.

"[W]hen an individual is 'both taken into custody and subjected to interrogation,' that individual is entitled to **Miranda** warnings." **Commonwealth v. Ganjeh**, 300 A.3d 1082, 1088-89 (Pa.Super. 2023) (quoting **Commonwealth v. Yandamuri**, 159 A.3d 503, 520 (Pa. 2017)), *appeal denied*, 313 A.3d 448 (Pa. 2024). To determine whether an individual was in custody and subject to interrogation, a court considers the "circumstances surrounding the interrogation" and if "a reasonable person [would] have felt that he or she was at liberty to terminate the interrogation and leave." **Id.** at 1089 (quoting **Yandamuri**, 159 A.3d at 520). "[N]ot every statement made by an individual during a police encounter amounts to an interrogation." **Id.** (citation omitted). For example, "[v]olunteered or spontaneous utterances by an individual are admissible even without **Miranda** warnings." **Commonwealth v. Williams**, 941 A.2d 14, 30 (Pa.Super. 2008) (*en banc*); **see also Commonwealth v. Fisher**, 769 A.2d 1116, 1125 (Pa. 2001) ("spontaneous, voluntary statements [are] not subject to suppression").

The parties do not dispute that Davis was in custody when he made his first statement to Officer Gallagher. However, the trial court concluded that suppression was not warranted because Davis made the statement spontaneously, based on Officer Gallagher's testimony, which the court found

- 9 -

credible. Regarding Davis's second statement to police, the court found that after Officer Smith read Davis his **_Miranda_** warnings, Davis waived his **_Miranda_** rights and gave a written statement.

The court committed no error in denying Davis's motion to suppress his statements. Even considering the conversation between the officers about whether to Mirandize Davis, Officer Gallagher testified that Davis spontaneously told him that the evidence in the car belonged to him, without any questioning from Officer Gallagher. Furthermore, Davis voluntarily gave a written statement after a valid **_Miranda_** waiver.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2025