J-S20041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ERIK LAMONT REED, JR. | : | |
| | : | |
| Appellant | : | No. 268 WDA 2022 |

Appeal from the PCRA Order Entered February 23, 2022
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000087-2016

BEFORE: NICHOLS, J., MURRAY, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: DECEMBER 14, 2022**

Appellant, Erik Lamont Reed, Jr., appeals from the order entered in the Westmoreland County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court set forth the relevant facts and procedural history of this case as follows:

> [Appellant] was charged with counts of Murder of the First Degree, 18 Pa.C.S. § 2502(a), Murder of the Third Degree, 18 Pa.C.S.A. § 2502(c), and Firearms not to be Carried without a License, 18 Pa.C.S.A. § 6106(a)(1). This arose out of his shooting of Donald Williams [("Victim")] during a melee between two (2) families in the City of Arnold, Westmoreland County on December 15, 2015. At the time of the shooting, [Appellant] was eighteen (18) years of age… [H]is jury trial … commenced on August 14, 2017. [Appellant], represented by Attorney Ralph Karsh, Esq. [("Trial Counsel")], testified and acknowledged that he killed

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[Victim]. However, he asserted that he was justified, as he was defending his stepfather, Kahil Dandridge [("Stepfather")], from [Victim]'s aggression. Specifically, he claimed that [Victim] was choking [Stepfather] when he shot him. The jury did not agree with those assertions, and [Appellant] was convicted of Murder of the First Degree and Firearms Not to be Carried without a License. Judge Hathaway sentenced him to life imprisonment without the possibility of parole on November 9, 2017.

Immediately following sentencing, [Trial Counsel] withdrew his appearance, and Judge Hathaway appointed Timothy Andrews, Esq. to represent [Appellant] during post-trial and appellate proceedings. Attorney Andrews filed post-sentence motions on November 15, 2017, and amended post-sentence motions on January 29, 201[8]. He argued that there was insufficient evidence upon which to convict [Appellant] of Murder in the First Degree and, in the alternative, that the verdict was against the weight of the evidence.

In her "Opinion and Order of Court" dated March 1, 2018, Judge Hathaway found that there was sufficient evidence to establish the elements of Murder in the First Degree and denied [Appellant's] motions. In support of her finding, she stated the following:

*    *    *

The Commonwealth introduced sufficient evidence to disprove the defense of others beyond a reasonable doubt. While [Stepfather] stated that he was being choked to such an extent that he nearly lost consciousness, there were no injuries to his neck. Moreover, Detective Gardner and Officer Schubert testified that when [Stepfather] gave them his story of what had happened during the fight, he did not inform either of them that he was being choked, or that he was in fear for his life. Officer Schubert testified that [Stepfather] informed him that "I got in a fight with him. He missed me. I hit him and nobody got shot." While [Appellant] stated that he shot [Victim] so that he would stop choking [Stepfather], [Appellant] testified that he did not warn [Victim] that he had a gun, nor did he

attempt to shoot him, in a nonlethal location. When asked why he did not shoot him in the hand or foot instead of the chest, which [Appellant] knew contained vital organs, [Appellant] simply stated that he did not think he had time, and that he was "not thinking about where I'm going to shoot him."

(Opin. and Ord. of Ct., J. Hathaway, Mar. 1, 2018, 21).

[This Court affirmed the judgment of sentence on December 18, 2018 and our Supreme Court denied the petition for allowance of appeal on June 27, 2019. *See Commonwealth v. Reed*, No. 477 WDA 2018 (Pa.Super. December 18, 2018) (unpublished memorandum), *appeal denied*, 654 Pa. 495, 216 A.3d 220 (2019)]. [Appellant] timely filed the within counseled PCRA Petition on May 18, 2020. He asserts that trial counsel was ineffective for failing to present expert testimony explaining how the undeveloped brain of an eighteen-year-old affects "impulse control, planning ahead, and risk avoidance." …

On June 16, 2020, [Appellant] filed a Motion for Leave to Hire an Expert, for the purpose of informing the [c]ourt "if retaining an expert would have offered a potential for success substantially greater than the course actually pursued, resulting in a reasonable probability that the outcome of the proceedings would have been different, but for counsel's action or inaction." The Commonwealth objected to [Appellant]'s motion. The prosecution argued first that an expert's testimony is irrelevant; and second, even if the [c]ourt finds that expert testimony providing context to the jury as to the mind set of an eighteen-year old is relevant, providing said testimony would not have offered a strategy with a greater likelihood of success than the justification defense pursued by [Trial Counsel]. By Order of Court dated October 26, 2020, the [c]ourt found [Appellant's] request to hire an expert was premature and denied [Appellant]'s Motion without prejudice, permitting him to re-file or re-present his motion at the conclusion of the evidentiary hearing on [Appellant]'s PCRA petition.

(PCRA Court Opinion, filed 2/23/22, at 1-5) (internal footnotes and citations

omitted).

- 3 -

The PCRA court held an evidentiary hearing on November 8, 2021. Trial Counsel testified that his focus for the trial was to demonstrate that Appellant's actions were reasonable and justified because he was acting to protect Stepfather's life. Trial Counsel believed that he had a strong case for a valid defense of others claim because of Appellant's testimony of prior altercations with the victim and his family, and the testimony of numerous members of Appellant's family about the circumstances of the fight prior to the shooting. Trial Counsel was aware of Appellant's young age at the time of the shooting and thought it was an important point to stress to the jury. Trial Counsel also stated that he was aware of the line of cases which relied on scientific studies about the underdeveloped nature of the brain of individuals under eighteen years old. Nevertheless, Trial Counsel did not think those cases or studies were relevant for trial because the cases only implicated sentencing and Appellant was already eighteen at the time of the shooting. Accordingly, Trial Counsel did not explore acquiring an expert witness to educate the jury on the relevant studies about the brain development and decision-making capacity of young individuals. Trial Counsel also indicated that he was constrained financially in his ability to hire an expert.

After considering all the evidence, the court denied Appellant's PCRA petition on February 23, 2022. On March 1, 2022, Appellant timely filed a notice of appeal. On March 3, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and

Appellant timely complied on March 9, 2022.

Appellant raises the following issue for our review:

> Did the PCRA Court err in denying [Appellant]'s PCRA petition alleging ineffective assistance of counsel when Trial Counsel failed to consult and present an expert regarding the impact of [Appellant]'s age upon his decision making?

(Appellant's Brief at 4).

Appellant argues that Trial Counsel provided ineffective assistance by failing to consult with or hire an expert witness to explain the difference in decision making between adolescents and adults, particularly in high-stress situations. Appellant contends that such expert testimony "was crucial to the assessment of [Appellant]'s state of mind as it pertains to the subjective elements of both the voluntary manslaughter charge and the instructions regarding justification." (*Id.* at 8). Appellant asserts that Trial Counsel had no reasonable basis for this failure, evidenced by Trial Counsel's testimony at the evidentiary hearing that he simply did not think to hire an expert for this purpose. Appellant claims that given the legal context of the United States Supreme Court's acceptance of scientific research on adolescent decision making and the fact that Appellant's state of mind was a central issue in this case, Trial Counsel's failure to explore expert testimony in this area was unreasonable. Further, Appellant avers that Trial Counsel's failure prejudiced Appellant because expert testimony on adolescent decision making could have altered the jury's determination on whether Appellant truthfully believed that Stepfather's life was in danger, resulting in a voluntary manslaughter verdict

instead of a first-degree murder verdict. Appellant concludes that the PCRA court erred in finding that Trial Counsel provided effective assistance, and this Court should vacate the order denying his PCRA petition and remand for further proceedings. We disagree.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 428, 218 A.3d 850 (2019). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is

a reasonable probability that the outcome of the proceedings would have been different.

**Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" **Commonwealth v. Smith**, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting **Commonwealth v. Pierce**, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." **Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa.Super. 2004).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." **Commonwealth v. Kelley**, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting **Pierce, supra** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in

comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 22, 807 A.2d 872, 883 (2002)).

Regarding counsel's failure to call an expert witness:

> To satisfy the arguable merit prong for a claim of ineffectiveness based upon trial counsel's failure to call an expert witness, the petitioner must prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses would have been helpful to the defense.

*Commonwealth v. Williams*, 636 Pa. 105, 137-38, 141 A.3d 440, 460

(2016) (internal citations, quotation marks, and footnote omitted).

Instantly, the PCRA court found that Appellant's claim had arguable merit because expert testimony on adolescent decision making would be admissible for the limited purpose of establishing Appellant's subjective belief that deadly force was necessary to defend Stepfather's life.[2]  On appeal,

---

[2] Our Supreme Court has held:

> To prevail on a justification defense, there must be evidence that the defendant (a) ... reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat.  The Commonwealth sustains its burden [of disproving self-defense] if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger.
>
> The derivative and lesser defense of imperfect belief self-defense is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life.

*Commonwealth. v. Sepulveda*, 618 Pa. 262, 289, 55 A.3d 1108, 1124 (2012) (internal quotation marks and citations omitted).

> Germane to whether the defendant reasonably believed it was necessary to kill to protect from imminent death or great bodily harm, our case law has recognized two requisite components to a defendant's state of mind: (1) the

Appellant does not contend that the PCRA court erred in this finding or that expert testimony on this topic would be admissible for any other purpose. Accordingly, we examine whether Trial Counsel had a reasonable basis for failing to offer expert testimony for the purpose of establishing Appellant's subjective state of mind and whether such failure prejudiced Appellant.

We note that any expert testimony regarding Appellant's genuine belief that he needed to use deadly force to protect Stepfather's life would have been cumulative to the evidence Trial Counsel presented for this purpose. Specifically, Appellant testified to his perception of the events prior to the shooting that led him to believe that he needed to use deadly force to protect Stepfather's life. Stepfather testified that Victim was on top of him and choking him at the time that Appellant shot Victim. Several members of Appellant's family testified about the chaotic fight during which Appellant ultimately shot Victim. Additionally, the jury was made aware that Appellant was eighteen years old at the time of the shooting. Given Appellant's testimony about his own state of mind and the corroborating testimony from his family members about the circumstances surrounding the shooting, we

---

defendant's subjective belief that he had an honest, bona fide belief that he was in imminent danger, to which expert testimony is admissible; and (2) the objective measurement of that belief, *i.e.*, the reasonableness of that particular belief in light of the facts as they appear, to which expert testimony is inadmissible.

*Commonwealth v. Rivera*, 631 Pa. 67, 88, 108 A.3d 779, 791-92 (2014).

discern no error in the court's determination that it was reasonable for Trial Counsel to proceed without calling an expert witness to establish Appellant's subjective belief. *See King, supra.*

Additionally, in his closing argument, Trial Counsel explained to the jury that the jury was obligated to reach a verdict of voluntary manslaughter if the jury found that Appellant held an honest but unreasonable belief regarding the need to use deadly force to protect life. Despite the evidence and argument that Trial Counsel presented of Appellant's subjective belief, the jury found Appellant guilty of first-degree murder, demonstrating that the jury did not believe that Appellant genuinely believed deadly force was required to protect Stepfather. We are unconvinced that expert testimony about adolescent decision making would have swayed the jury's determination about Appellant's subjective belief, particularly when the jury was aware of his age and had the benefit of hearing from Appellant about his state of mind before and during the shooting. As the PCRA court noted, it is likely that the jury did not find Appellant credible especially considering the evidence presented by the Commonwealth demonstrating that Stepfather's life was not actually in danger. Specifically, the court noted:

> While [Stepfather] stated that he was being choked to such an extent that he nearly lost consciousness, there were no injuries to his neck. Moreover, Detective Gardner and Officer Schubert testified that when [Stepfather] gave them his story of what happened during the fight, he did not inform either of them that he was being choked or that he was in fear for his life.

- 11 -

> Based on this, it would appear that the jury did not believe [Stepfather's] testimony that [Victim] was chocking him when [Appellant] pulled the trigger. Without the testimony that his life was in danger, there was no other evidence corroborating [Appellant]'s testimony that he had to use lethal force to save [Stepfather].

(PCRA Court Opinion at 19) (internal citations omitted). On this record, we discern no error in the court's determination that the production of an expert witness on adolescent decision making was unlikely to change the result of the proceeding. ***See Spotz, supra***. Accordingly, Appellant failed to establish the second and third prong of the test for ineffectiveness and we affirm the PCRA court's denial of his ineffective assistance of counsel claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/14/2022