J-S38009-22

**ON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WAVERLY WINSTON | : | |
| | : | |
| Appellant | : | No. 433 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 7, 2022
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002551-2020

BEFORE: KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JUNE 2, 2023**

Waverly Winston ("Winston") appeals from the judgment of sentence imposed following a stipulated non-jury trial at which the trial court found him guilty of possession with intent to deliver a controlled substance ("PWID"), conspiracy to commit PWID, conspiracy to possess drug paraphernalia, driving while operating privilege suspended, and related offenses.[1]  We affirm.

The trial court summarized the factual background of this appeal as follows:

> On May 12, 2020, at approximately 10:00 p.m., [Pennsylvania State Police] Trooper [Steve] Slavin was on traffic patrol when he queried the registration of a vehicle which revealed the registered owner[, Ernest McClary,] had an active warrant and was currently suspended [from driving].  Trooper Slavin conducted a vehicle stop.  The vehicle . . . stopped on the shoulder of the highway, where the speed limit is 45 miles per hour, in an area typically with heavy traffic.  The vehicle contained the driver,

---

[1] **See** 35 P.S. § 780-113(a)(30), (32); 18 Pa.C.S.A. § 903; 75 Pa.C.S.A. § 1543(a); **see also** 35 P.S. § 780-113(a)(16).

[Winston,] and a passenger. Trooper Slavin identified the passenger[, McClary,] as the registered owner of the vehicle [and confirmed that he did not have a valid driver's license. Winston also] did not have a valid driver's license.

At this point, Trooper Slavin requested [Winston] to exit the vehicle to further investigate the stop. [Winston] complied. Trooper Slavin inquired why [Winston] was driving with a suspended license. Trooper [Slavin c]onducted a pat-down search for officer safety, which revealed that [Winston] had marijuana on his person. Trooper Slavin asked [Winston] whether there was anything illegal in the vehicle. [Winston] responded there was marijuana in the vehicle. Trooper Slavin then requested [McClary] to exit the vehicle. [McClary] complied.

Trooper Slavin's backup arrived on scene. The vehicle was to be towed, in accordance with PA State Police policy FR-1-4, Shield Regulation. Trooper Slavin proceeded to search the vehicle. There was a black plastic bag on the passenger[-]side floor. Inside the black bag was a clear bag with [a] white powdery substance . . . .. Trooper Slavin searched the remainder of the car. The rear seat behind the driver[-]side seat contained a black zippered bag which contained another clear bag with a white powdery substance, later identified as cocaine[, having a net weight of just over thirty grams.] Also on the seat, next to the bag, was a measuring cup and a towel.[2] [Winston] and

_____

[2] We note that Trooper Slavin testified inconsistently about the location of the towel and the measuring cup. At the preliminary hearing, the trooper indicated that the towel and measuring cup were inside the zippered bag. *See* N.T. Preliminary Hearing, 9/8/20 at 10, 25. At the suppression hearing, the trooper testified that the towel and measuring cup were next to the zippered bag. *See* N.T. Suppression, 4/20/21, at 15. The trial court apparently resolved the inconsistency in favor of finding that the towel and measuring cup were next to the zippered bag. *See* Trial Court Opinion, 5/31/22, at 3.

Additionally, there appears to be confusion over which bag, the black plastic bag in the front passenger compartment or the zippered bag in the seat directly behind Winston, contained white powdery substances later determined to contain cocaine. A review of the record makes clear that white powder in the black plastic bag near McClary tested negative for controlled substances but could be used as a "cutting agent," while the contents of the

*(Footnote Continued Next Page)*

passenger were taken into custody and the vehicle was to be towed.

Trial Court Opinion, 5/31/22, 2-3. Trooper Slavin's "dash-cam" recorded video and portions of the audio from the interactions surrounding the stop, search, and arrest.

At the preliminary hearing, the Commonwealth presented Trooper Mark Solerno as an expert witness. Trooper Solerno opined that the amount of cocaine found in the car, along with the presence of other contraband, was consistent with an intent to sell the cocaine. *See* N.T. Preliminary Hearing, 9/8/20, at 30-32. The magisterial district judge held the charges over for trial.[3]

Winston filed a motion to suppress asserting that Trooper Slavin unlawfully stopped and detained him, and no exigent circumstances supported the warrantless search of the car. *See* Motion to Suppress, 2/10/21, at ¶¶ 3-4, 7. The trial court held a hearing, at which Trooper Slavin testified, and the Commonwealth presented the court with a State Police directive concerning inventory searches. The trial court denied the suppression motion concluding that the trooper would have inevitably discovered the contraband in the car pursuant to an inventory search. *See* Order, 6/1/21, at 3.

_____

powder in the zippered bag behind Winston tested positive for cocaine. *See* N.T. Preliminary Hearing, 9/8/20, at 13-14, 32.

[3] McClary apparently pleaded guilty to the charges against him, including a count of conspiracy, after the preliminary hearing. *See* N.T., Stipulated Non-Jury Trial, 12/21/21, at 33.

Winston proceeded to a stipulated non-jury trial at which the parties agreed to a trial upon the record without additional testimony. The Commonwealth thereafter moved for the admission of the dash-cam video, the suppression hearing transcript, the affidavit of probable cause, and a laboratory report, and then rested its case. **See** N.T., Stipulated Non-Jury Trial, 12/21/21, at 8. During Winston's argument to the court that the record did not establish the intent to deliver a controlled substance, the Commonwealth objected. **See id**. at 16-18. The prosecutor asserted that the Commonwealth had agreed to allow Winston to argue that the evidence was insufficient to establish his possession of the drugs, but the agreement did not include challenges to Winston's intent to deliver the drugs. **See id**. Over Winston's objection, the trial court found there was a mistake regarding the scope of the record and permitted the Commonwealth to supplement the record with the preliminary hearing transcript. **See id.** The trial court thereafter found Winston guilty of the above-listed offenses,[4] and on January 7, 2022, sentenced him to an aggregate term of twenty-one to forty-two months of incarceration. Winston timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Winston raises the following issues for our review:

I.      Whether the court below erred in denying [the] motion to suppress evidence, where police conducted a warrantless vehicle search without probable cause, exigent

---

[4] The trial court found Winston not guilty of conspiracy to possess a controlled substance.

- 4 -

circumstance, or any other applicable exception to the warrant requirement, in violation of Pa. Const. Art. 1, § 8 and U.S. Const. Amends. IV, XIV?

II.    Whether the trial court erred when it permitted the prosecution to introduce evidence of the preliminary hearing transcript . . . since it did so during closing arguments, after the prosecution rested and the trial's evidentiary phase concluded?

III.   Whether the evidence is insufficient to sustain the convictions for possession with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia since the prosecution failed to prove beyond a reasonable doubt that [Winston] actually or constructively possessed any controlled substance or paraphernalia?

IV.    Whether the evidence is insufficient to sustain the convictions for conspiracy to possession with intent and to drug paraphernalia[,] since the prosecution failed to prove beyond a reasonable doubt that [Winston], with the intent to promote or facilitate a crime, entered an agreement to commit either offense or that an overt act was taken to further such an agreement?

Winston's Brief at 6 (italics omitted).

In his first issue, Winston challenges the trial court's denial of his motion to suppress. Our standard of review is as follows:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where . . . the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record . . ..

*Commonwealth v. Davis*, 241 A.3d 1160, 1171 (Pa. Super. 2020) (internal citation omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect private citizens from unreasonable searches and seizures by government officials. *See Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *United States v. Mendenhall*, 446 U.S. 544, 551 (1980)). "Warrantless searches are presumptively unreasonable under the state and federal constitutions." *Commonwealth v. Barr*, 266 A.3d 25, 40 (Pa. 2021) (internal citation omitted). Moreover, Article I, Section 8 of the Pennsylvania Constitution affords greater protections than the Fourth Amendment, and a warrantless investigatory search of a vehicle generally requires the Commonwealth to show probable cause and exigent circumstances. *See Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020).[5]

Under the inevitable discovery doctrine,

> [e]vidence which would have been discovered [is] sufficiently purged of the original illegality to allow admission of the evidence

---

[5] *Alexander*, which our Supreme Court decided approximately seven months after the vehicle search at issue here, abrogated *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), which previously held that, consistent with the Fourth Amendment, the Pennsylvania Constitution required only probable cause to search a car, not probable cause and exigent circumstances. Here, Winston preserved an *Alexander* claim in his motion to suppress and is entitled to retroactive application of *Alexander*. *See Commonwealth v. Heidelberg*, 267 A.3d 492, 502-03 (Pa. Super. 2021) (*en banc*) (noting that a new rule of law generally applies retroactively to pending cases but a party must have raised and preserved in the trial court a claim that the new rule of law should apply), *appeal denied*, 279 A.3d 38 (Pa. 2022).

. . .. [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

***Commonwealth v. King***, 259 A.3d 511, 522 (Pa. Super. 2021) (internal citation omitted). This Court has upheld the recovery of evidence where an initial search was improper, but the police had a basis to tow a vehicle and would have inevitably discovered evidence inside the car pursuant to a proper inventory search. ***See id***. at 522-23; ***see also Commonwealth v. Bailey***, 986 A.2d 860, 862-63 (Pa. Super. 2009).

Section 6309.2 of the Motor Vehicle Code outlines the procedures for the immobilization or towing of a vehicle when the driver is operating without a license or proper registration:

**(a) General rule.—** . . .

(1) If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended . . . the law enforcement officer shall immobilize the vehicle . . . ***or, in the interest of public safety, direct that the vehicle be towed and stored*** by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

\* \* \* \*

**(c) Procedure upon towing and storage.—**

(1) [T]he following steps shall be taken:

(i) The appropriate judicial authority shall notify the appropriate law enforcement officer of the county in which the violation occurred.

(ii) The officer notified under subparagraph (i) shall notify the appropriate towing and storage agent to tow and store the vehicle . . . and provide notice by the most expeditious means and by first class mail, proof of service, of the towing, storage and location of the vehicle . . . to the owner of the vehicle . . . .

75 Pa.C.S.A. § 6309.2(a)(1), (c)(1)(i)-(ii) (emphasis added).

In *Commonwealth v. Lagenella*, 83 A.3d 94 (Pa. 2013), our Supreme Court outlined the requirements of an inventory search as follows: "An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." *Lagenella*, 83 A.3d at 102 (internal citation omitted). An inventory search requires, in relevant part, a proper basis to stop a vehicle and to tow and store or impound the vehicle. *See id*. at 105-06 (rejecting the Commonwealth's argument that an inventory search based solely on the immobilization of a vehicle is proper). Our Supreme Court has succinctly stated that "[i]f the search was conducted as part of a criminal investigation, it is not an inventory search." *Commonwealth v. White*, 669 A.2d 896, 903 (Pa. 1995).

Winston initially contends that Trooper Slavin lacked probable cause to believe that he or McClary were engaged in criminal activity at the time the trooper searched the car and that no exigent circumstances supported the search. *See* Winston's Brief at 20-21. Winston continues that the trial court

erred in concluding that the trooper would have inevitably discovered the contraband upon conducting an inventory search because the trooper failed to follow standard procedures during the search. *See id*. at 23-24. Winston maintains the Commonwealth seeks to avoid *Alexander*'s requirement that vehicle searches require probable cause and exigent circumstances by belatedly attempting to justify Trooper Slavin's conduct as an inventory search or by invoking the inevitable discovery doctrine. *See id*.[6]

The trial court determined that troopers would have inevitably discovered the illegal substances and drug paraphernalia located in the bags in the vehicle. *See* Trial Court Opinion, 5/31/22, at 3-4. Both Winston, the driver, and McClary, the owner and passenger of the car, had suspended driver's licenses and neither could continue to operate the vehicle. *See id*. at 4. The court credited evidence that it was not safe to leave the vehicle on the shoulder of the highway and that a proper inventory search pursuant to State

---

[6] We note that Winston's initial brief focuses more on Trooper Slavin's conduct of the search and the lack of exigent circumstances than on the trial court's application of the inevitable discovery doctrine. Winston, in his reply brief, argues that inevitable discovery requires more than the mere possibility that the evidence could have been discovered but proof that the evidence would have been discovered absent the taint during the prior illegal search. *See* Winston's Reply Brief at 1 (citing *Commonwealth v. Perel*, 107 A.3d 185, 196 (Pa. Super. 2014)). We find that Winston waived the expanded inevitable discovery argument first raised in his reply brief. *See Commonwealth v. Fahy*, 737 A.2d 214, 219 n.8 (Pa. 1999) (noting that "a reply brief cannot be a vehicle to argue issues raised but inadequately developed in appellant's original brief") (internal citation omitted). In any event, for the reasons discussed herein, we conclude that there was a sufficient basis for the trial court to determine that the inevitable discovery exception applied.

Police directives would have led to the recovery of the drugs and paraphernalia. *See id*.

Following our review, we conclude Winston's arguments do not establish an error in the trial court's suppression ruling. Winston's focus on Trooper Slavin's improper search of the car is misplaced. Even if Trooper Slavin improperly searched the car, the Commonwealth's invocation of the inevitable discovery doctrine required the trial court to consider whether, absent misconduct, troopers would have inevitably discovered the evidence.[7] *See King*, 259 A.3d at 522. Here, the Commonwealth presented the trial court with Trooper Slavin's testimony, the State Police directives, and a dash-cam recording, all of which showed troopers had a basis to tow the car for public safety reasons, would have conducted an inventory search, and would have inevitably found the contraband in the car. *See* N.T. Suppression Hearing, 4/20/21, at 17-18 (indicating that the Commonwealth marked a memorandum concerning directive FR-1-4 as Exhibit CS2, and Trooper Slavin testified that that directives would have required that the car be towed and

---

[7] If the sole issue at the suppression hearing were the propriety of Trooper Slavin's search of the vehicle, we might agree that the search was conducted as part of a criminal investigation and not an inventory search. *See White*, 669 A.2d at 903. However, our analysis in this appeal is limited to the trial court's conclusion that troopers **would have** recovered the contraband during an inventory search, not whether Trooper Slavin found the contraband **during** an inventory search. *See King*, 259 A.3d at 522. The *White* Court did not address the specific issue of inevitable discovery. *See White*, 669 A.2d at 903.

an inventory search performed);[8] *see also* Exhibit C1 (dash-cam video showing that the car was stopped on a narrow shoulder close to a lane of traffic). The State Police directives also provided that an inventory search would have permitted troopers to open the containers in the vehicle. *See* Exhibit CS2 at 9 (stating that unlocked or unsealed container shall be opened and searched during an inventory search). Accordingly, troopers performing an inventory search would inevitably have found the contraband inside the bags. Thus, the trial court's findings and its legal conclusions that the inevitable discovery rule applied have record support, and we will not disturb its suppression ruling. *See King*, 259 A.3d at 522; *Bailey*, 986 A.2d at 862-63.

Winston next challenges the trial court's decision to reopen the record to allow the Commonwealth to supplement the stipulated non-jury trial record with the preliminary hearing transcript. By way of further factual background, we summarize the record relevant to this issue as follows. Following a colloquy on Winston's trial rights, Winston elected to proceed to a non-jury

___

[8] The Commonwealth marked the State Police directives as Exhibit CS2, but did not formally move to admit Exhibit CS2 into evidence. However, the exhibits from the suppression hearing in the record contain Exhibit CS2, and both Winston and the Commonwealth refer to the substance of the directives in their appellate briefs. *See* Winston's Brief at 24 (noting that the directives required the creation of a property record form that the Commonwealth did not produce); Commonwealth's Brief at 13 (discussing scope of the inventory search required by the directives); Winston's Reply Brief at 4 (asserting that the Commonwealth failed to establish Trooper Slavin complied with the directives). We therefore conclude that Winston has waived any formal defect in the inclusion of the directives as part of the suppression record, and we will refer to it in this appeal.

trial and agreed to the court rendering a decision based on the record. **_See_** N.T. Stipulated Non-Jury Trial, 12/21/21, at 6-7. The Commonwealth then represented that the record before the court consisted of: the suppression hearing transcript; the laboratory report stating that the white powder found in the bag behind Winston contained cocaine; the criminal complaint; and the dash-cam video. **_See id_**. at 7-10. The Commonwealth thereafter rested, and Winston began his closing argument with a claim that the trial court should not find him guilty of PWID because the evidence did not establish his constructive possession of the cocaine in the car. **_See id_**. at 10-13. However, when Winston's counsel asserted that the Commonwealth's evidence did not establish his intent to deliver the cocaine, **_see id_**. at 13-14, the following exchange occurred:

> [The Commonwealth]: Your Honor, if we could stop for a moment? I agree to a stipulated bench [trial] with . . . the understanding that there's going to be an appeal with regard to the suppression hearing. If counsel is now going to argue arguments that would entail testimony from experts, then I would ask that this matter be listed for a jury trial. That was not my understanding of the reason for a stipulated bench [trial].
>
> * * * *
>
> . . . And we're talking about testimony that would not have been presented at a suppression hearing where this is totally distinct argument which would require testimony from an expert and that would be a matter for a jury, so if that's the argument that's now being made, I am not in agreement to a . . . waiver of a jury trial.
>
> [Winston's Counsel]: . . . Judge, I was very clear when we conferenced this case that I was not . . . conceding guilt and . . . we were contesting the elements of the offense and that's why

- 12 -

I'm making argument here. And the Commonwealth knew I was going to make argument on --

[The Commonwealth]: . . . Your Honor, I find that to be disingenuous because all the conversations we've had in the back had to do with this being a constructive possession case. If we're going to now do a sneak attack and contest whether this is actual intent to deliver, then I request a jury trial. . . .

* * * *

. . . And Mr. Winston can go facing [sic] the jury, but I am not in agreement at this point. . . .

[Defense Counsel]: Judge, there's no sneak attack here and I resent the allegation that it is. I let the [c]ourt know that . . . we were contesting every element of the offense. I said definitely possession and probably intent.

[The Commonwealth]: No, that was never said, Your Honor. . . .

* * * *

THE COURT: I think that . . . there seems to be some misunderstanding as to what was going to be presented here by way of factual argument and legal argument. There has to be a meeting of the minds. They both have to -- both sides have to agree to a waiver. . . . This seems to be a pretty fundamental difference . . ..

*Id*. at 14-16.

After a discussion off the record, the trial court ruled as follows:

. . . [W]e're still in closing argument for [the d]efense. I think there has been discussion about notes of the preliminary hearing be[ing] admitted [and] being marked as C-5.[9]

* * * *

---

[9] Winston renewed his objection to supplementing the record arguing that the Commonwealth had rested its case. *See* N.T. Stipulated Non-Jury Trial, 12/21/21, at 17-18.

- 13 -

Based on the fact that there seems to be . . . a misunderstanding between counsel, this [c]ourt finds in a matter of completeness and fairness that the notes of the preliminary hearing will be marked and admitted into evidence, noting the objection of [Winston's counsel].

*Id*. at 17-18.

When reviewing a trial court's decision to reopen a trial record, we employ an abuse of discretion standard. *See Commonwealth v. Baldwin*, 58 A.3d 754, 763 (Pa. 2012); *Commonwealth v. Tharp*, 575 A.2d 557, 559 (Pa. 1990). The trial court may reopen a record after the parties rest their cases to prevent "a failure or miscarriage of justice." *Baldwin*, 58 A.3d at 763 (internal citations and quotations omitted). Factors relevant to a decision to reopen a trial record include: the timing of the request to open; the nature of the proffered testimony or evidence; the reasons for and reasonableness of the late proffer; and the relative weight of the proffered evidence versus the potential for disruption or prejudice. *See id*.

Winston contends that all relevant factors for reopening the record weighed against the Commonwealth. *See* Winston's Brief at 26-28. Winston argues that the Commonwealth had no excuse for its failure to include the preliminary hearing transcript in the record before it rested and that its belated request, during his closing argument, resulted in prejudice. *See id*. at 27-28. Winston concludes that he is entitled to a remand for a consideration of his guilt based on the record without the preliminary hearing transcript. *See id*. at 30.

As noted above, the trial court determined that there was a misunderstanding of the scope of agreement that affected the Commonwealth's decision to agree to a non-jury trial. N.T. Stipulated Non-Jury Trial, 12/21/21, at 16-17. The trial court ultimately ruled that as a matter of "completeness and fairness," it would admit the transcript of the preliminary hearing. *Id*. at 18.

Following our review, we conclude that the trial court's findings have support in its record and the court properly reopened the record. The Commonwealth interposed its objection as soon as Winston began challenging the intent element of PWID, and the trial court found there was a fundamental misunderstanding as to the scope of the factual and legal issues for the stipulated non-jury trial. *See id*. at 14-18. The trial court implicitly found this misunderstanding to be reasonable, notwithstanding Winston's counsel's argument that he had consistently preserved his right to challenge intent at the stipulated non-jury trial. *See id*. Furthermore, the preliminary hearing transcript containing Trooper Solerno's expert opinions concerning the intent element of PWID was highly probative and its admission was not unduly disruptive or prejudicial under the circumstances of this case. Thus, we conclude that the trial court did not abuse its discretion when it reopened the

record for "completeness and fairness."[10]  *Id*. at 18; *see Tharp*, 575 A.2d at 559.

In his last two issues, Winston challenges the sufficiency of the evidence.  Winston, in his third issue, challenges the sufficiency of the evidence that he possessed the drugs or paraphernalia found in the car.  In his fourth issue, he contends that the evidence was insufficient to find him guilty of conspiracy to commit PWID.  These arguments are related, and we address them together.

Questions concerning the sufficiency of the evidence are questions of law, and our standard of review is *de novo*, and our scope of review is plenary. *See Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019).  The standard we apply in reviewing the sufficiency of the evidence is whether,

> viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record

---

[10] To the extent Winston asserts that the admission of the preliminary hearing transcript altered his understanding of the scope of the stipulated non-jury trial, he, like the Commonwealth, had the option to demand a full trial or a jury trial.  He did not so do.

must be evaluated[,] and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Perez*, 931 A.2d 703, 706-07 (Pa. Super. 2007) (internal citation omitted).

As for possession, the Commonwealth may establish possession of a controlled substance or paraphernalia by proving actual or constructive possession. If contraband is not discovered on the defendant's person, the Commonwealth may prove that the defendant had constructive possession of the contraband. Constructive possession means the defendant had an ability to exercise conscious dominion over the contraband, that is, that he had the power to control the contraband and the intent to exercise that control. *See Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (*en banc*). "[T]he power and intent to control the contraband does not need to be exclusive to the defendant[,]" and "constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and equal access." *Id*. (internal citation and quotations omitted). However, if another person has equal access to the location of the contraband, "presence alone in conjunction with such access will not prove conscious dominion over the contraband." *Id*. (internal citation and quotations omitted).

Regarding conspiracy, a person commits criminal conspiracy with another person or persons if, "with the intent of promoting or facilitating [a crime's] commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such

- 17 -

crime or an attempt or solicitation to commit such crime." 18 Pa.C.S.A. § 903(a). The essence of a criminal conspiracy is a common understanding or agreement that a particular criminal objective be accomplished. *See Commonwealth v. Munson*, 261 A.3d 530, 542 (Pa. Super. 2021).

> Circumstantial evidence may provide proof of the conspiracy. The conduct of the parties and the circumstances surrounding such conduct may create a "web of evidence" linking the accused to the alleged conspiracy beyond a reasonable doubt. Additionally:
>
> > An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail.

*Perez*, 931 A.2d at 708 (internal citation omitted). Where the Commonwealth establishes a conspiracy to commit PWID, for example, a co-conspirator will be fully liable for all drugs recovered without the necessity of proving constructive possession. *See id*. at 709.

Winston, in challenging the sufficiency of the evidence that he constructively possessed the cocaine and the paraphernalia and was liable for PWID as a co-conspirator, argues that he was merely present in the car. *See* Winston's Brief at 36, 38-39. Winston asserts that no evidence or combination of circumstances proved that he was aware of the contraband in the car or that he agreed to possess the cocaine and the paraphernalia or deliver the cocaine. *See id*. at 39.

The trial court, after reciting the relevant law, engaged in a relatively brief analysis of these issues opining that the evidence supported its verdicts because "[Winston] was the driver of the vehicle (passenger was the owner) which contained illegal substances, packaging material[,] and [Winston] admitted to marijuana being in the vehicle." Trial Court Opinion, 5/31/22, at 7.

Upon a review of the record adduced at the stipulated non-jury trial and mindful of our standard of review, we discern no merit to Winston's mere presence arguments. Trooper Slavin testified that after he stopped McClary's vehicle, he approached the car and found that Winston was driving McClary's car, and McClary was in the passenger seat. *See* N.T. Suppression Hearing, 4/20/21, at 9. Winston had his "hands up during the initial encounter and approach" and appeared to be "pretty nervous." *Id*. at 12. Winston told the trooper that his license was suspended, but McClary had asked him to drive. *See id*. at 9; *see also* Exhibit C1 (dash-cam video) at 2:25 to 2:30. After Trooper Slavin had Winston exit the car and frisked him, Winston stated that he had marijuana on his person, and the trooper recovered marijuana and an empty baggie from Winston's pocket.[11] *See* N.T., Suppression Hearing, 4/20/21, at 13; N.T., Preliminary Hearing, 9/8/20, at 9; *see also* Exhibit C1

_____

[11] We note that the affidavit of probable cause attached to the criminal complaint indicates that Winston had "two clear green baggies" on his person that was "consistent with drug paraphernalia." *See* Affidavit of Probable Cause, 5/13/20, at 2; *see also* N.T., 12/21/21, at 8 (admitting the affidavit of probable cause as Exhibit C3).

at 10:13. When the trooper asked how Winston knew McClary, Winston described McClary as "like an uncle." *See* Exhibit C1 at 10:44. Winston also stated that he was wearing McClary's jacket. *See id*. at 11:09. When the trooper asked if there was anything else in the car, Winston responded, "[J]ust weed." N.T., Suppression Hearing, 4/20/21, at 13; *see also* Exhibit C1 at 11:55 (indicating that Trooper Slavin stated Winston told him there may be a "little bit of weed in a bag," which the trooper had not yet seen).

After having McClary exit the car, Trooper Slavin searched the car and recovered, from around the front passenger seat where McClary had been seated, a black plastic shopping bag that was "tightly tied." N.T., Preliminary Hearing, 9/8/20, at 10, 23. Upon opening the black bag, Slavin discovered a clear plastic bag containing a white powdery substance. *See* N.T., Suppression Hearing, 4/20/21, at 14.

On the rear passenger seat directly behind the driver's side seat, the trooper recovered a zippered bag. *See id*. at 15. The zippered bag contained another clear baggie containing a white powdery substance. *See id*. Next to the zippered bag, the trooper discovered a clear measuring cup and a towel. *See id*. Testing revealed that the bag of white powder from the black shopping bag found beside co-defendant McClary's seat was not a controlled substance. *See* Exhibit C4 (laboratory report). The bag of white powder from the zippered bag behind the driver's seat tested positive as cocaine with a net weight of over thirty grams. *See id*. Trooper Solerno, the Commonwealth's expert, testified that the non-narcotic white powder beside McClary and the

measuring cup behind Winston was consistent with paraphernalia used to "break down the cocaine and make crack cocaine, which could then be . . . sold for a lower amount to have a larger profit." N.T. Preliminary Hearing, 9/8/20, at 31-32. Trooper Solerno stated that the purchase price of the cocaine was approximately $1,500. *See id*. at 31.

Based on the foregoing record, which we must read in a light most favorable to the Commonwealth as the verdict winner, we conclude that there was sufficient evidence that Winston and co-defendant McClary had entered into a conspiracy to possess the cocaine and the paraphernalia used to convert and distribute the cocaine in a different, higher-profit form. To the extent Winston argues that he was merely present and could not have known about the drugs and paraphernalia in the car, the circumstantial evidence in the record belies his claims. Winston had a close relationship to McClary and was driving McClary's car despite both having suspended driver's licenses. Winston possessed at least one empty baggie that Trooper Slavin considered to be drug paraphernalia. The zippered bag containing thirty grams of cocaine and the measuring cup were on the seat directly behind the driver's seat, where Winston had been seated. Winston, according to Trooper Slavin, exhibited nervousness on the trooper's approach, and he attempted to minimize the nature of the contraband located in the car by indicating that there was only marijuana in the car.

Viewing the totality of these circumstances, we conclude there was a "web of evidence" from which a fact finder could reasonably infer the existence

- 21 -

of the conspiracies to commit PWID and possess drug paraphernalia. ***See***

***Perez***, 931 A.2d at 708. Winston's arguments ultimately go to the weight of

the Commonwealth's evidence, not its sufficiency, and the evidence and

reasonable inference therefrom were not so weak or inconclusive as to upset

the trial court's finding that Winston and McClary agreed to and engaged in a

conspiracy to commit PWID and to possess the related paraphernalia.[12]

Because the Commonwealth established conspiracy to commit PWID and

possession of paraphernalia, we need not address Winston's issue concerning

constructive possession of the cocaine and the paraphernalia separately. ***See***

***id***. at 709.

Judgment of sentence affirmed.

---

[12] Winston, for example, insists that the dash-cam recording did not support Trooper Slavin's testimony that Winston appeared nervous. However, Trooper Slavin testified that Winston appeared nervous when the trooper initially made contact with him, when Winston was inside the car. The dash-cam recording did not show Winston's demeanor when he was inside the car. Similarly, given the location of the cocaine in the zippered bag directly behind Winston, a court was entitled to reject his argument that he was unaware of the presence of the cocaine because it was not in plain view. Given the value of the cocaine and the other paraphernalia in the car, it is reasonable to infer that neither Winston nor McClary had simply left the cocaine and paraphernalia in the car for any length of time, but, at the time of the stop, they had either recently purchased the drugs or were transporting the drugs and paraphernalia to prepare the cocaine in the near future for distribution.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/2/2023</u>