J-A26035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TYREE MARCE SAUNDERS | : | |
| Appellant | : | No. 298 WDA 2025 |

Appeal from the PCRA Order Entered November 4, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014353-2017

BEFORE: OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: December 24, 2025**

Appellant, Tyree Marce Saunders, appeals from the order entered in the Allegheny County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. On March 21, 2017, Appellant delivered multiple bags of fentanyl-laced heroin to Jeremy Clark ("Victim"). After the delivery, Victim ingested the drugs. Victim was found dead on the afternoon of March 22, 2017. That same day, police commenced their investigation into Victim's death. At approximately 3:00 p.m., Detective Daniel Jena of the Clairton Police Department obtained Victim's cell phone. Detective Jena discovered text messages between Victim

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

and Appellant regarding the drug transaction from the prior day. Consequently, Detective Jena used Victim's phone to message Appellant and arrange a purchase of heroin. Appellant agreed to the new transaction. At 5:15 p.m., Appellant arrived at the predetermined location. Police immediately arrested Appellant. A subsequent search of Appellant's person yielded the heroin, as well as the cell phone Appellant utilized to arrange the transaction.

Also on March 22, 2017, the Commonwealth filed a criminal complaint charging Appellant with offenses related to Detective Jena's "buy bust operation." (Affidavit of Probable Cause, dated 3/22/17, at 2).[2] The court later docketed these charges at No. 4108 of 2017. Following a bench trial on October 11, 2017, the court convicted Appellant of possession of a controlled substance with intent to deliver ("PWID"), possession of a controlled substance, and possession of drug paraphernalia. The court later sentenced Appellant to an aggregate term of six (6) to twelve (12) months' imprisonment, followed by three (3) months of county probation.

While Appellant's charges at No. 4108 of 2017 remained pending, the Commonwealth filed a separate criminal complaint for the instant case. At No. 14353 of 2017, the court docketed these charges related to the drug transaction resulting in Victim's death. Appellant proceeded to trial on

---

[2] Appellant attached the criminal complaint and affidavit of probable cause to his amended PCRA petition as Exhibit 1.

September 10, 2019, and a jury found him guilty of drug delivery resulting in death and related offenses. On December 18, 2019, the court sentenced Appellant to an aggregate term of seven (7) to fourteen (14) years' imprisonment, followed by five (5) years of probation. This Court affirmed the judgment of sentence on January 20, 2022, and our Supreme Court denied Appellant's petition for allowance of appeal on June 27, 2022. **See Commonwealth v. Saunders**, 272 A.3d 491 (Pa.Super. 2022) (unpublished memorandum), *appeal denied*, ___ Pa. ___, 281 A.3d 299 (2022).

On June 23, 2023, Appellant timely filed a *pro se* PCRA petition at No. 14353 of 2017. The court appointed counsel, who filed an amended PCRA petition on April 12, 2024. In it, Appellant alleged that trial counsel was ineffective for failing to argue that the charges at No. 14353 of 2017 were barred from prosecution, pursuant to the compulsory joinder rule, where Appellant was already convicted for crimes arising from the same set of facts at No. 4108 of 2017. The Commonwealth filed an answer to the PCRA petition on May 29, 2024. On June 6, 2024, the court provided Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's PCRA petition without a hearing. Appellant did not respond to the Rule 907 notice. On November 6, 2024, the court dismissed Appellant's PCRA petition.

Appellant timely filed a notice of appeal on November 14, 2024. On March 19, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed

his Rule 1925(b) statement on March 25, 2025.

Appellant now raises one issue for this Court's review:

Whether trial counsel provided ineffective assistance for failing to raise an issue that the present case was barred from being prosecuted pursuant to 18 Pa.C.S. § 110 as a violation of compulsory joinder when Appellant was already convicted for crimes arising from the same set of facts before Judge Lazzara?

(Appellant's Brief at 4).

On appeal, Appellant argues that the cases at Nos. 4108 of 2017 and 14353 of 2017 were inextricably intertwined, involved the same facts, and relied on the same evidence. Appellant emphasizes that both cases stemmed from the Clairton Police Department's investigation into Victim's overdose death. Appellant avers that the text messages recovered from Victim's cell phone were the central pieces of evidence in both matters. Further, Appellant asserts that the same law enforcement officers investigated both cases, and the same assistant district attorney prosecuted both cases. Appellant also notes that the assistant district attorney even attempted to join the cases at one point, and this attempt at joinder "shows that the Commonwealth understood that the cases were inextricably intertwined and could not be tried separately."[3] (*Id.* at 25-26).

---

[3] Our review of the record reveals that the Commonwealth filed a notice of joinder per Pa.R.Crim.P. 582(B)(1) at No. 14353 of 2017 on December 13, 2017. Thus, the Commonwealth filed the notice of joinder after the trial for No. 4108 of 2017, which occurred in October 2017.

For these reasons, Appellant asserts that there is arguable merit to his claim that trial counsel should have raised some type of argument under the compulsory joinder rule. Appellant maintains that there was no strategic basis for counsel's failure to raise such argument. Moreover, Appellant posits that he suffered prejudice because the instant case "would have been barred" in light of the prosecution at No. 4108 of 2017. (*Id.* at 26). Appellant concludes that trial counsel was ineffective for failing to raise a challenge under the compulsory joinder rule, and the PCRA court erred in dismissing his petition. We disagree.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

"Counsel is presumed to have rendered effective assistance." **Commonwealth v. Hopkins**, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to

prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit." *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

The test for deciding whether counsel had a reasonable

basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "A criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

The Crimes Code provides for compulsory joinder under the following circumstances:

> **§ 110.  When prosecution barred by former prosecution for different offense**
>
> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:

(1)     The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:

   (i)     any offense of which the defendant could have been convicted on the first prosecution;

   (ii)     any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense or the offense of which the defendant was formerly convicted or acquitted was a summary offense or a summary traffic offense; or

   (iii)   the same conduct, unless:

      (A)     the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

      (B)     the second offense was not consummated when the former trial began.

18 Pa.C.S.A. § 110(1).

Our Supreme Court has summarized Section 110(1)(ii) as follows:

As this Court has previously concluded, Subsection 110(1)(ii) of the compulsory joinder statute clearly and unambiguously contains four primary elements, which, if met, preclude a prosecution due to a former prosecution for a different offense:

   (1) the former prosecution must have resulted in an acquittal or conviction;

(2) the current prosecution is based upon the same criminal conduct or arose from the same criminal episode as the former prosecution;

(3) the prosecutor was aware of the instant charges before the commencement of the trial on the former charges; and

(4) the current offense occurred within the same judicial district as the former prosecution.

*Commonwealth v. Perfetto*, 652 Pa. 101, 117-18, 207 A.3d 812, 821 (2019) (internal citation omitted).

Our Courts have also provided the following explanations regarding whether a current prosecution is based upon the same criminal conduct as a former prosecution:

When examining whether a defendant has satisfied the second prong, which is also known as the logical relationship prong, courts should consider both the temporal and logical relationship between the charges to determine whether they arose from a single criminal episode. The logical relationship prong of the test requires a substantial duplication of issues of law and fact.

*Commonwealth v. Forrester-Westad*, 282 A.3d 811, 822 (Pa.Super. 2022) (internal citations and quotation marks omitted).

Such a determination depends ultimately on how and what the Commonwealth must prove in the subsequent prosecution. There is a substantial duplication of issues of fact if the Commonwealth's case rests solely upon the credibility of one witness in both prosecutions. There is no substantial duplication if proof … require[s] the introduction of the testimony of completely different police officers and expert witnesses as well as the establishment of separate chains of custody…. When determining if there is a duplication of legal issues, a court should not limit its analysis to a mere comparison of the charges, but should

also consider whether, despite the variation in the form of the criminal charges, there is a commonality of legal issues within the two prosecutions. It should be remembered, however, that the mere fact that the additional statutory offenses involve additional issues of law or fact is not sufficient to create a separate criminal episode since the logical relationship test does not require an absolute identity of factual backgrounds. Finally, in considering the temporal and logical relationship between criminal acts, we are guided by the policy considerations § 110 was designed to serve, which must not be interpreted to sanction volume discounting, procedural maneuvering, or … to label an enterprise an episode.

*Commonwealth v. Reid*, 621 Pa. 245, 257, 77 A.3d 579, 585-86 (2013) (internal citations and quotation marks omitted).

Instantly, Appellant's amended PCRA petition included the trial transcript for the case at No. 4108 of 2017. (**See** Amended Petition, filed 4/12/24, at Exhibit 2). There, Detective Jena testified that he obtained Victim's cell phone on March 22, 2017. (**See** N.T. Trial, 10/11/17, at 13). Detective Jena used the phone to arrange a meeting with Appellant near Victim's place of employment. Detective Jena asked Appellant if he could purchase heroin packaged with the "NBA Finals" stamp. (**Id.** at 26). Appellant informed the detective that the stamp was changed to "Fantastic," but the drugs were the same. (**Id.** at 27). Detective Jena further testified that Appellant arrived at the predetermined location at approximately 5:15 p.m., and law enforcement immediately took Appellant into custody. The arresting officers recovered Appellant's cell phone, which he was holding in his right hand. Detective Jena identified Appellant's cell phone "by calling that phone

from [Victim's] phone that I had." (**Id.** at 29). Officers also recovered two bundles of heroin, marked with the "Fantastic" stamp, from a cigarette box in Appellant's coat pocket. (**Id.** at 30).

In addition to Detective Jena, the Commonwealth called a forensic examiner, Christopher Merrill. Mr. Merrill tested samples of the drugs contained in the bundles with the "Fantastic" stamp. The testing confirmed the presence of fentanyl within the samples. (**Id.** at 51). Finally, the Commonwealth called Matthew McDanel, another detective from the Clairton Police Department. Detective McDanel testified that Detective Jena provided him with the evidence recovered from Appellant. Thereafter, Detective McDanel submitted the drug samples to the crime lab for analysis. (**Id.** at 65).

Importantly, the facts and law at issue in No. 4108 of 2017 do not amount to a substantial duplication of the facts and law involved in No. 14353 of 2017. In the instant case, the Commonwealth submitted evidence of the text messages between Victim and Appellant prior to the overdose. The messages revealed that Victim contacted Appellant to procure heroin at 7:20 p.m. on March 21, 2017. (**See** N.T. Trial, 9/10/19-9/12/19, at 227). The messaging continued until Appellant directed Victim to the location where Victim could retrieve the drugs. (**Id.** at 227-32).

The Commonwealth also called Christina Stuart, Victim's girlfriend, to describe what happened immediately prior to Victim's overdose. Ms. Stuart

testified that on the night in question, Victim informed her that he would be leaving work at around 8:00 p.m. Even though Victim had a fifteen-minute commute, he did not return home until 10:00 p.m. At some point, Appellant went upstairs while Ms. Stuart remained downstairs. At midnight, Ms. Stuart went upstairs and found Victim overdosed. Ms. Stuart immediately provided CPR, which revived Victim. Following his resuscitation, Ms. Stuart and Victim went downstairs and fell asleep on a couch. Ms. Stuart briefly woke at approximately 7:00 a.m., and Victim was still lying beside her. Ms. Stuart went back to sleep until 1:00 p.m., when her children woke her. The children informed Ms. Stuart that Victim was upstairs "sleeping funny." (*Id.* at 120). When Ms. Stuart went to check on Victim, she discovered that he had died.

Further, the Commonwealth presented testimony from multiple law enforcement officers. Richard Castagna, a narcotics agent for the Attorney General's Office,[4] testified that he arrived at Victim's residence at 1:30 p.m. that afternoon. Upon arriving, Agent Castagna went upstairs to a back bedroom and discovered the cap for a hypodermic needle near Victim's body. Agent Castagna believed that other drugs or paraphernalia were missing from the scene. Eventually, Ms. Stuart informed Agent Castagna that she had moved the drugs and paraphernalia after she discovered Victim's body. Ms. Stuart led Agent Castagna to the kitchen and provided him with nineteen

---

[4] On the date of Victim's overdose, Agent Castagna was employed as an officer with the Clairton Police Department.

empty bags of heroin. The bags were stamped with the "NBA The Finals" in blue ink. (*Id.* at 45).

Thereafter, the Commonwealth called its forensic experts. Carly Hixon testified as an expert in toxicology. Ms. Hixon described the county lab's blood testing procedures, as well as the individual results of Victim's blood test. Significantly, Victim tested positive for fentanyl. (*Id.* at 68). Jennifer Janssen, the manager of the lab's toxicology section, explained that the level of fentanyl in Victim's system was "higher than the therapeutic range and consistent with what has been reported in lethal cases." (*Id.* at 78). Finally, Todd Luckasevic, the forensic pathologist who conducted Victim's autopsy, confirmed that Victim died because of an accidental fentanyl overdose. (*Id.* at 100).

Although Appellant now claims that the charges for both cases are inextricably intertwined, Appellant has failed to satisfy the "logical relationship" prong of the *Perfetto* test. The case at No. 4108 of 2017 arose from Detective Jena's controlled purchase of drugs from Appellant near Victim's place of employment. Conversely, the charges in the instant case stemmed from an entirely different transaction, which led to Victim's overdose death. The trials for each set of charges required different witnesses to establish the elements of the offenses at issue. As such, there is no arguable merit to Appellant's claims that the instant case should have been barred from prosecution. *See Reid, supra*; *Forrester-Westad, supra*. Accordingly, we

affirm the order dismissing Appellant's PCRA petition.

Order affirmed.

Judge Olson joins this memorandum.

Judge Stabile files a dissenting memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/24/2025